## NOYES-BUICK CO. v. NICHOLS, Internal Revenue Collector.

(District Court, D. Massachusetts.    Aug. 25, 1926.)

### No. 2598.

Internal revenue ⊜⇒9(26)—Capital of corporation held not subject to surcharge of item for good will (Revenue Act 1921, § 1000 [Comp. St. § 5980n]).

Plaintiff corporation acted as distributing agent for an automobile manufacturing company in a large territory under a contract which was only from year to year, without right of renewal or assignment, and the continuance of which depended solely on the life and continuance in business of its president and largest stockholder, and his personal relation to the manufacturing company. *Held* that its capital was not subject to be surcharged with an item for good will for the purpose of computation of excise tax, under Revenue Act 1921, § 1000 (Comp. St. § 5980n).

At Law. Action by the Noyes-Buick Company against Malcolm E. Nichols, Collector of Internal Revenue. Judgment for plaintiff.

J. N. Welch, of Boston, Mass., for plaintiff.

Harold P. Williams, U. S. Atty., and Marcus Morton, Jr., Asst. U. S. Atty., both of Boston, Mass., for defendant.

MORTON, District Judge. This is an action at law to recover back excise taxes assessed on the corporate franchise of the plaintiff for the years 1923 and 1924, under section 1000 of the Revenue Act of 1921 (Comp. St. § 5980n).

There is no dispute about the facts. They are as follows: During the period in question the Noyes-Buick Company was a distributor in the New England field of Buick automobiles, which it obtained from the Buick Motor Company. It had been in this business for a number of years. Mr. Noyes, its founder, had started as agent for the Buick Company when it was small, and in a business way he had grown with it. He had stood by it, and had helped it financially during the period when it needed support and assistance. On his testimony, which is not contradicted, those from time to time in charge of the Buick Company have always recognized in an honorable way his claim upon its gratitude and consideration, and also, no doubt, his ability in selling cars.

During the years preceding those covered by these taxes, the Noyes-Buick Company had developed a large business based upon Buick cars. It obtained them under annual contracts with the Buick Company. These contracts carried no right of renewal, and were terminable at the option of either party on 30 days' notice in writing. They specially provided that they were not assignable. A succeeding contract was made as the preceding contract expired, and in that way the business was practically continuous. Mr. Noyes testifies that in 1923 and 1924 it was not the policy of the Buick Company to carry on business by such distributor contracts; that the arrangement with him was continued only because of his long connection with the Buick Company; that he was notified that when his connection with the Noyes-Buick Company terminated, its contract would not be renewed; and that the managers of the Buick Company refused to accede to his request that he be permitted to turn the business over to his son. This testimony is not contradicted, and there is nothing in the surrounding facts which renders it improbable. The stock of the Noyes-Buick Company is all owned by Mr. Noyes, except a few shares inconsequential in number. It has never been sold in a way that would fix or help to fix the value of it.

The Noyes-Buick Company made for each of the years in question proper returns, the accuracy of which is not disputed, except that no item for good will was included. It submitted that the excise tax should be levied upon the fair value of its net assets, which was the basis approved in Hecht v. Malley, 265 U. S. 144, 162, 163, 44 S. Ct. 462, 68 L. Ed. 949. The Commissioner rejected this basis, and added to the value of the assets returned $799,000 for good will for the year 1923, and $700,000 for good will for the year 1924. On these additions he collected $799 and $700, respectively, in taxes. These constitute the sums here in controversy, which the plaintiff seeks to recover back.

No testimony was offered by the government at the hearing of this case; but the reasons on which the Commissioner proceeded are fully stated in the correspondence between the parties. His views are well

summarized in his letter to the plaintiff of June 13, 1925, from which the following quotations are taken:

"The earning capacity, however, shown under Exhibit C of the returns, indicated that there was attached to the business an intangible or good will value which was not included in the assets as reported. Values were therefore computed, using Exhibit C as the basis, and the additional tax assessed. * * *

"The value required is not a liquidating value, or a value which might be computed under certain assumed conditions, but a present-day going concern value, which embraces not only the tangible worth, but also the entire potentiality, of the corporation for earning profit. * * * It may be questioned whether the General Motors Company, in the face of such results, would desire to disturb the present relations. * * *

"The Bureau is of the opinion that under the present conditions the contract has a value to your company as a going concern, as evidenced by the earning capacity, and that such value should be included in the amounts reported in the returns for the period under review."

By Revenue Act 1926, § 700, "the determination by the Commissioner as to the fair average value of the capital stock of a domestic corporation shall be only prima facie evidence of the facts on which such determination was based." As the letter quoted shows, the Commissioner's action was based on the net income of the plaintiff for the five preceding years, as shown by its returns. For the five years preceding 1922 the average income was $335,000, and for the five years preceding 1923 $447,000. The Commissioner determined that the average income should, for taxation purposes, be regarded as 12.8 per cent. of the value of the franchise for the year 1923, and 13.2 per cent. for the year 1924. How this proportion was arrived at, and the reasons for it, are not stated. Mr. Johnson, employed by Lee-Higginson Company to investigate issues of securities with reference to the purchase of them, testifies for the plaintiff that this is altogether too low a ratio, and that the Noyes-Buick Company was not worth more than the amount stated in the return. There is no conflicting testimony.

It is apparent that a very unusual situation was presented—a company doing an extensive business, based on its ability to obtain in large quantities and to sell exclusively through a populous territory a popular make of automobiles, the ability to obtain

the cars and to hold the exclusive territory, resting on the personal relations between the owner of the selling company and the managers of the manufacturing company. Obviously the good will of such a business is dependent on the life of the owner of it, and on the continuance of the friendly feeling for him by the managers of the other company. With every regard for the Commissioner's determination, I cannot believe that any reasonable person would pay any substantial sum for good will, resting on such an insecure and precarious foundation. On that point Mr. Johnson seems to me to be clearly right.

I should hesitate before agreeing to certain basic assumptions in the Commissioner's letter of June 13, 1925; e. g., that a selling agent's capital account should be surcharged with a good will item in order to bring it to a predetermined proportion of the earnings. This is analogous to valuing a broker's office furniture, or a lawyer's law books, according to his income. Doubtless an average ratio could be worked out between the earnings and the furniture, or law books, but there is no causal connection between them. I think that the Commissioner failed to appreciate the extraordinary character of the business with which he was dealing, and in the surcharges which he imposed for good will made a decision which cannot be supported.

On all the evidence, I find and rule that the plaintiff is entitled to recover the amounts claimed. Such of the requests for rulings and findings as are marked "given," or are contained in or consistent with the foregoing memorandum, are given; the others are refused.

Judgment for plaintiff.