265 U.S. 144 (1924)
HECHT ET AL., TRUSTEES,
v.
MALLEY, FORMER COLLECTOR OF INTERNAL REVENUE.
HOWARD ET AL., TRUSTEES,
v.
MALLEY, FORMER COLLECTOR OF INTERNAL REVENUE.
HOWARD ET AL., TRUSTEES,
v.
CASEY, FORMER ACTING COLLECTOR OF INTERNAL REVENUE.
CROCKER ET AL., TRUSTEES,
v.
MALLEY, FORMER COLLECTOR OF INTERNAL REVENUE.
Nos. 99, 100, 101, 119.
Supreme Court of United States.
Argued May 3, 1923.
Decided May 12, 1924.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.
*145 Mr. Edward F. McClennen, with whom Mr. William H. Dunbar and Mr. Allison L. Newton were on the brief, for petitioners in Nos. 99, 100 and 101.
Mr. Alfred A. Wheat, Special Assistant to the Attorney General, with whom Mr. Solicitor General Beck was on the briefs, for respondents.
Mr. Harrison M. Davis, with whom Mr. Felix Rackemann was on the brief, for petitioners in No. 119.
MR. JUSTICE SANFORD delivered the opinion of the Court.
These four cases, which were heard together, involve the question whether the trustees of three "Massachusetts Trusts" are subject to the special excise taxes imposed upon certain "associations" by the Revenue Act of 1916 *146 (39 Stat. 756, c. 463), and the Revenue Act of 1918[1] (40 Stat. 1057, c. 18), based upon the value of their capital stock.
The petitioners in Case No. 99 are the trustees of the "Hecht Real Estate Trust"; in Nos. 100 and 101, the trustees of the "Haymarket Trust"; and in No. 119, the trustees of the "Crocker, Burbank & Co. Ass'cn." Excise taxes were assessed against them under these acts and paid under protest.[2] They then brought suits for refund in the Federal District Court in Massachusetts, and had recoveries. 276 Fed. 830. The judgments in their favor were reversed by the Circuit Court of Appeals. 281 Fed. 363. And these writs of certiorari were granted. 260 U.S. 715, 717.
The "Massachusetts Trust" is a form of business organization, common in that State,[3] consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest in the property *147 is divided. These certificates, which resemble certificates for shares of stock in a corporation and are issued and transferred in like manner, entitle the holders to share ratably in the income of the property, and, upon termination of the trust, in the proceeds.
Under the Massachusetts decisions these trust instruments are held to create either pure trusts or partnerships, according to the way in which the trustees are to conduct the affairs committed to their charge. If they are the principals and are free from the control of the certificate holders in the management of the property, a trust is created; but if the certificate holders are associated together in the control of the property as principals and the trustees are merely their managing agents, a partnership relation between the certificate holders is created. Williams v. Milton, 215 Mass. 1, 6; Frost v. Thompson, 219 Mass. 360, 365; Dana v. Treasurer, 227 Mass. 562, 565; Priestley v. Treasurer, 230 Mass. 452, 455.
These trusts  whether pure trusts or partnerships  are unincorporated. They are not organized under any statute; and they derive no power, benefit or privilege from any statute. The Massachusetts statutes, however, recognize their existence and impose upon them, as "associations," certain obligations and liabilities.[4]
The Hecht Real Estate Trust was established by the members of the Hecht family upon real estate in Boston used for offices and business purposes, which they owned as tenants in common. It is primarily a family affair. The certificates have no par value; the shares being for *148 one-thousandths of the beneficial interest. They are transferable; but must be offered to the trustees before being transferred to any person outside of the family. The trustees have full and complete powers of management; but no power to create any liability against the certificate holders. There are no meetings of certificate holders; but they may, by written instrument, increase the number of trustees, remove a trustee, appoint a new trustee if there be none remaining, modify the declaration of trust in any particular, terminate the trust, or give the trustees any instructions thereunder.
The Haymarket Trust is strictly a business enterprise. It was established by the original subscribers who furnished the money for the purchase of a building in Boston used for store and office purposes. The shares are of the par value of $100 each. Except as otherwise restricted, the trustees have general and exclusive powers of management, but no power to bind the certificate holders personally. At any annual or special meeting of the certificate holders, they may fill any vacancies in the number of trustees, depose any or all the trustees and elect others in their place, authorize the sale of the property or any part thereof, and alter or amend the agreement of trust.
The Crocker, Burbank & Co. Ass'cn. is also a business enterprise. It was formerly entitled The Wachusett Realty Trust. The certificates have no par value; the shares being for ninety-six thousandths of the beneficial interest in the property. The trustees originally held the fee of certain lands subject to a long lease and the stock of a Massachusetts corporation engaged in manufacturing paper and owning and operating several mills. In Crocker v. Malley, 249 U.S. 223 (1919), in which the original trust instrument was before the Court, it was held that the trustees were not subject as to the dividends received from the corporation to the tax imposed by the Income Tax Act of 1913 upon the net income of "every corporation, *149 joint-stock company or association. . . . organized in the United States," but were subject only to the duties imposed by the Act upon trustees. The original trust agreement involved in that case has now, however, been modified, with the assent of the certificate holders. By this modification "the form of (the) organization" was specifically "changed to that of an association," under its present name. The trustees were authorized to surrender the stock of the manufacturing corporation, to acquire instead its entire property, and to carry on the business theretofore conducted by it, or any substantially similar business. The title to all the trust property "and the right to conduct all the business" were vested exclusively in the trustees, who were authorized to designate from their number a president and other officers and to prescribe their duties. The certificate holders were authorized, at any meeting, to remove any trustee and elect trustees to fill any vacancies. Since the modification of the trust agreement the trustees have carried on the manufacturing business in substantially the same manner as it was formerly conducted by the corporation.
To determine rightly the scope and effect of the Revenue Acts now in question it is necessary to bear in mind the previous legislation on the same subject, and the interpretation given it by the decisions of this Court.
Section 38 of the Act of August 5, 1909, c. 6, 36 Stat. 11, 112  commonly called the Corporation Tax Law  provided: "That every corporation, joint stock company or association, organized for profit and having a capital stock represented by shares, and every insurance company, now or hereafter organized under the laws of the United States or of any State or Territory . . ., or now or hereafter organized under the laws of any foreign country and engaged in business in any State or Territory of the United States . . . shall be subject to pay annually a special excise tax with respect to the carrying on or doing business *150 . . . equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources . . .; or if organized under the laws of any foreign country, . . . from business transacted and capital invested within the United States and its Territories. . . ."[5]
In Flint v. Stone Tracy Co., 220 U.S. 107 (1911), the Court, in sustaining the constitutionality of this section of the Act, said that the domestic corporations, joint stock companies or associations, as well as the insurance companies, "must be such as are now or hereafter organized under the laws of the United States or of any State or Territory", and that the tax was imposed "upon the doing of business with the advantages which inhere in the peculiarities of corporate or joint stock organizations of the character described", that is, "upon the exercise of the privilege of doing business in a corporate capacity, as such business is done under authority of state franchises."
In Eliot v. Freeman, 220 U.S. 178, 185 (1911), it was held that this excise tax did not apply to two typical Massachusetts trusts. The Court said: "Under the terms of the Corporation Tax Law, corporations and joint stock associations must be such as are `now or hereafter organized under the laws of the United States or of any State or Territory. . . .' The language . . . `now or hereafter organized under the laws of the United States,' etc., imports an organization deriving power from statutory enactment. . . . The description of the corporation or joint stock association as one organized under the laws of a State at once suggests that they are such as are the creation of statutory law, from which they derive their powers and are qualified to carry on their operations. . . . Entertaining the view that it was the *151 intention of Congress to embrace within the corporation tax statute only such corporations and joint stock associations as are organized under some statute, or derive from that source some quality or benefit not existing at the common law, we are of opinion that the real estate trusts involved in these two cases are not within the terms of the act."
We come now to the consideration of the Acts involved in the present cases.
1. Revenue Act of 1916.  Section 407, Title IV, of this Act provides (39 Stat. 789) that: "Every corporation, joint-stock company or association, now or hereafter organized in the United States for profit and having a capital stock represented by shares, and every insurance company, now or hereafter organized under the laws of the United States, or any State or Territory .. ., shall pay annually a special excise tax with respect to the carrying on or doing business . . ., equivalent to 50 cents for each $1,000 of the fair value of its capital stock," including the surplus and undivided profits, but less an exemption of $99,000 from the capital stock.
And, in a separate paragraph, that "Every corporation, joint-stock company or association, or insurance company, now or hereafter organized for profit under the laws of any foreign country and engaged in business in the United States shall pay annually a special excise tax . . ., equivalent to 50 cents for each $1,000 of the capital actually invested in the transaction of its business in the United States."
Section 10, Title I, also provides that there shall be paid annually a tax of two per centum upon the net income received "by every corporation, joint-stock company or association, or insurance company, organized in the United States, no matter how created or organized."
The bill as introduced in the House of Representatives contained this provision for an income tax, but no provision *152 for an excise tax. It was amended in the Senate so as to impose on every corporation, joint-stock company or association, as defined and limited in § 10, Title I, that is, "organized in the United States, no matter how created or organized", a special tax of 50 cents for each $1,000 "of capital, surplus and undivided profits used in any of the activities or functions of their business." The Chairman of the Senate Committee on Finance, in reporting the bill with this amendment, referred to it as "imposing a small tax upon corporations in the nature of a license tax for doing business." The House, however, did not agree to this amendment. And later, pursuant to the report of a Conference Committee, there was inserted in the bill, in lieu of the Senate amendment, the provision for a special excise tax now contained in § 407 of the Act, in which the words "no matter how created or organized" were omitted, and the words "organized under the laws of the United States, or any State or Territory", which had been contained in the Act of 1909, were inserted. 64th Cong. 1st sess., H.R. 16763, and Sen. Rep. No. 793, Pt. 1, p. 2; 53 Cong. Rec., Pt. 11, p. 10663, and Pt. 13, p. 14020.
It thus appears that Congress intended to make a clear distinction between the provisions relating to the income tax and to the excise tax, and purposely framed them, as shown by the amendment incorporated in the bill before its final passage, so that while the income tax provision should apply to all domestic corporations, joint-stock companies or associations, no matter how created or organized, the excise tax provision should only apply to such as were organized under statutory law. See United States v. Press Publishing Co., 219 U.S. 1, 13; United States v. St. Paul Railway, 247 U.S. 310, 318.
The words, "now or hereafter organized under the laws of the United States, or any State or Territory", appear in the Act of 1916 in precisely the same place with reference *153 to the preceding words "every corporation, joint-stock company or association" as in the Act of 1909, and are separated from them in like manner by the phrase "and every insurance company", followed by the like comma. And it is clear that in the intermediate phrase "now or hereafter organized in the United States for profit and having a capital stock represented by shares", the words "in the United States" were inserted in the Act of 1916 after the word "organized" merely by reason of the fact that this Act refers to domestic and foreign corporations, joint-stock companies and associations in two separate paragraphs instead of in the same paragraph as in the Act of 1909. The words "organized in the United States" have no different effect, as applied to domestic corporations, joint-stock companies and associations, from the word "organized" as used in the Act of 1909, and in no wise remove the ensuing general limitation that they must be such as are "organized under the laws of the United States, or any State or Territory."
And since these limiting words, when used in the Act of 1909, had been held by this Court, in Eliot v. Freeman, to show the intention of Congress to embrace within the statute only such corporations and joint-stock associations as "are organized under some statute, or derive from that source some quality or benefit not existing at the common law," they must be given the same meaning and effect when used in the Act of 1916. In adopting the language used in an earlier act, Congress must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment. Sessions v. Romadka, 145 U.S. 29, 43; Latimer v. United States, 223 U.S. 501, 504. And here the legislative history of the excise tax provision of the Act of 1916, and the marked contrast between its language and that of the income tax provision of the same Act, plainly show, aside from this rule of statutory construction, that this is what Congress in fact intended.
*154 We conclude that as the trusts involved in these four cases are not organized under any statute and derive from such source no quality or benefit, they are not within the terms of the excise tax provision of the Act of 1916.
2. Revenue Act of 1918.  Section 1 of this Act provides (40 Stat. 1057) that when used in the Act  the "term `corporation' includes associations, joint-stock companies, and insurance companies"; the "term `domestic' when applied to a corporation or partnership means created or organized in the United States"; and the "term `foreign' . . . means created or organized outside the United States".
Section 1000(a) provides that in lieu of the tax imposed by § 407 of the Revenue Act of 1916  "Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business,[6] equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year," including the surplus and undivided profits, as is in excess of $5,000; and every "foreign corporation shall pay annually a special excise tax with respect to carrying on or doing business in the United States, equivalent to $1 for each $1,000 of the average amount of capital employed in the transaction of its business in the United States during the preceding year."[7]
By § 1400(a), Title IV of the Revenue Act of 1916  including § 407 relating to excise taxes  is specifically repealed, except for the assessment and collection of taxes accrued thereunder and the imposition and collection of penalties and forfeitures.
Reading together the defining and enacting sections of the Act it is as if § 1000(a) provided in terms that: Every *155 corporation, association, joint-stock company and insurance company, "created or organized in the United States", shall pay a special excise tax, as prescribed, with respect to the carrying on or doing business. And it must be given effect as thus read.
The terms of this Act are in marked and significant contrast with those of the Acts of 1909 and 1916. Not only is the Act of 1916 specifically repealed, but the well-defined words of limitation "organized under the laws of the United States, or any State or Territory", that had been used in that Act as well as in the Act of 1909, are omitted; and in lieu thereof the excise tax is extended, broadly, to every "association" created or organized in the United States and carrying on or doing business therein. And thereby, in our opinion, the intention of Congress is plainly shown to extend the tax from one imposed solely upon organizations exercising statutory privileges, as theretofore, to include also organizations exercising the privilege of doing business as associations at the common law.
It is true that the Chairman of the Ways and Means Committee of the House of Representatives in a statement as to "the general principles of the bill",  which included many kinds of taxes  while saying that the committee had made an important change in the rates and exemptions in the capital stock tax, made no reference to any enlargement of the class of organizations to which the tax would apply; and that the Chairman of the Senate Committee on Finance, in reporting on the bill, while stating that it "provided for the continuance of the capital stock tax on the basis of the fair average value of the capital stock of the corporation," and made certain changes in rates, likewise made no reference to any such enlargement in the scope of its provisions. 56 Cong. Rec., Pt. 12, App. p. 698; 65th Cong. 3d sess., Sen. Rep. No. 617, p. 17. We cannot, however, regard the slight negative inference which might *156 be drawn from the failure of these chairmen to point out the enlargement of the class of organizations made subject to the excise tax, as sufficient to overcome the evidence of the legislative intention drawn from the plain and unambiguous language of the Act itself, emphasized by the contrast with that of the Act of 1916 which it supplanted.
Nor can we agree with the contention that the definition clause of the Act is not to be held applicable to the excise tax provision on the ground that the Act consolidated many former taxing acts and its general definitions may have been inadvertently extended to the excise tax provision without any actual intention of departing from the language of the former statute in this respect. This is not a mere revision and consolidation of former statutes to which a new interpretation is not to be given without some substantial change in phraseology. McDonald v. Hovey, 110 U.S. 619; Buck Stove Co. v. Vickers, 226 U.S. 205. It is a new statute, supplanting and changing the former statutes in many respects, and in which there is a significant change of phraseology, incorporated in the general definition clause made applicable, expressly, to every provision of the Act.
Nor does the language of the Act in this respect call for the application of the established rule that in the interpretation of statutes levying taxes their provisions are not to be extended by implication beyond the clear import of the language used, and in case of doubt are to be construed most strongly against the Government and in favor of the taxpayer. Gould v. Gould, 245 U.S. 151, 153; United States v. Merriam, 263 U.S. 179, 187. Here the language of the Act is specific, leaving no substantial doubt as to its meaning; and the taxpayers are seeking by implication to limit its clear import.
3. We also conclude that these three trusts are "associations" created or organized in the United States and engaged in business, within the meaning of the Act. The trustees of the Hecht and Haymarket Trusts insist that *157 they are not such "associations". The trustees of the Crocker Association on the other hand admitted in the Circuit Court of Appeals and at the bar, that since the modification of the original trust agreement, the trust constitutes an "association".
The word "association" appears to be used in the Act in its ordinary meaning. It has been defined as a term "used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise." 1 Abb. Law Dict. 101 (1879); 1 Bouv. Law Dict. (Rawle's 3rd Rev.) 269; 3 Am. & Eng. Enc. Law (2d ed.) 162; and Allen v. Stevens (App. Div.), 54 N.Y.S. 8, 23, in which this definition was cited with approval as being in accord with the common understanding. Other definitions are: "In the United States, as distinguished from a corporation, a body of persons organized, for the prosecution of some purpose, without a charter, but having the general form and mode of procedure of a corporation." Webst. New Internat. Dict. "[U.S.] An organized but unchartered body analogous to but distinguished from a corporation." Pract. Stand. Dict. And see Malley v. Bowditch (C.C.A.), 259 Fed. 809, 812; Chicago Title Co. v. Smietanka (D.C.) 275 Fed. 60: also United Mine Workers v. Coronado Co., 259 U.S. 344, 392, in which unincorporated labor unions were held to be "associations" within the meaning of the Anti-Trust Law.
We think that the word "association" as used in the Act clearly includes "Massachusetts Trusts" such as those herein involved, having quasi-corporate organizations under which they are engaged in carrying on business enterprises.[8] What other form of "associations", if any, it includes, we need not, and do not, determine.
*158 It is true that in Eliot v. Freeman, supra, at p. 186, it was said that the two trusts there involved could "hardly be said to be organized, within the ordinary meaning of that term." However, the decision was based solely upon the ground that they were not subject to the tax imposed by the Act of 1909 because they were not organized under any statute; and the inference from the entire opinion is that if the Act had not required such a statutory organization they would have been held to be within its terms. And we think that the present trusts are both "created" and "organized" in the United States within the meaning of the Act.
The trustees of the Hecht and Haymarket Trusts earnestly rely, however, upon the decision in Crocker v. Malley, supra, as conclusively determining that they cannot be held to be "associations" unless the trust agreements vest the shareholders with such control over the trustees as to constitute them more than strict trusts within the Massachusetts rule. This case arose under § II, G(a), of the Income Tax Act of 1913 imposing a tax upon the net income of "every corporation, joint-stock company or association . . . organized in the United States, no matter how created or organized." Section II, D, provided that trustees or other fiduciaries were exempt from *159 this tax upon dividends received from corporations taxable upon their net income. The precise question was whether the trustees of The Wachusett Realty Trust were subject to the income tax upon dividends received from a Massachusetts corporation that was itself taxable upon its net income. The trustees insisted that they were not an "association" subject to this tax, under G(a), but merely trustees and entitled to the exemption as fiduciaries under D. The trust had been created by a Maine corporation which contemplated dissolution, for the benefit of its shareholders. It had transferred to the trustees the fee of certain lands leased to a Massachusetts manufacturing corporation engaged in operating several mills, and also the stock in that corporation which it held. The purpose of the trust was to convert this property into money and distribute the net proceeds to the beneficiaries, within a period left to the discretion of the trustees. Meanwhile they were to distribute the net income, but could apply any funds for the repair and development of the property or the acquisition of other property, pending conversion and distribution. Their function, as emphasized in the opinion, was not to manage the mills, but simply to collect the rents and income, with a large discretion in its application. The beneficiaries had no control except in certain matters in which their consent was required.
The Court, after stating that the declaration of trust on its face was "an ordinary real estate trust of the kind familiar in Massachusetts," and that there could be "little doubt that in Massachusetts this arrangement would be held to create a trust and nothing more," said that "as the plaintiffs undeniably are trustees, if they are to be subjected to a double liability the language of the statute must make the intention clear;" and that "it would be a wide departure from normal usage to call the beneficiaries here a joint-stock association when they are admitted not to be partners in any sense, and when they *160 have no joint action or interest and no control over the fund. On the other hand, the trustees by themselves cannot be a joint-stock association within the meaning of the act unless all trustees with discretionary powers are such, and the special provision for trustees in D. is to be made meaningless. We perceive no ground for grouping the two  beneficiaries and trustees  together, in order to turn them into an association, by uniting their contrasted functions and powers, although they are in no proper sense associated. . . . We presume that the taxation of corporations and joint-stock companies upon dividends of corporations that themselves pay the income tax was for the purpose of discouraging combinations of the kind now in disfavor, by which a corporation holds controlling interests in other corporations which in their turn may control others, and so on, and in this way concentrates a power that is disapproved. There is nothing of that sort here. Upon the whole case we are of opinion that the statute fails to show a clear intent to subject the dividends on the Massachusetts corporation's stock to the extra tax imposed by G(a)."
This opinion is based primarily upon the view that the Income Tax Act, considering its purpose, did not show a clear intention to impose upon the trustees as an "association" a double liability in reference to the dividends on stock in the corporation that itself paid an income tax, when considered as "trustees" they were by another provision of the Act exempt from such payment. And the language used arguendo in reaching this conclusion that the trustees could not be deemed an association unless all trustees with discretionary powers are such, and that there was no ground for grouping together the beneficiaries and trustees in order to turn them into an association  is to be read in the light of the trust agreement there involved, under which the trustees were, in substance, merely holding property for the collection of the *161 income and its distribution among the beneficiaries, and were not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business. Zonne v. Minneapolis Syndicate, 220 U.S. 187, 190. And see Smith v. Anderson, L.R., 15 Ch. Div. 247.
It results that Crocker v. Malley is not an authority for the broad proposition that under an Act imposing an excise tax upon the privilege of carrying on a business, a Massachusetts Trust engaged in the carrying on of business in a quasi-corporate form, in which the trustees have similar or greater powers than the directors in a corporation, is not an "association" within the meaning of its provisions.
We conclude, therefore, that when the nature of the three trusts here involved is considered, as the petitioners are not merely trustees for collecting funds and paying them over, but are associated together in much the same manner as the directors in a corporation for the purpose of carrying on business enterprises, the trusts are to be deemed associations within the meaning of the Act of 1918; this being true independently of the large measure of control exercised by the beneficiaries in the Hecht and Haymarket cases, which much exceeds that exercised by the beneficiaries under the Wachusett Trust. We do not believe that it was intended that organizations of this character  described as "associations" by the Massachusetts statutes and subject to duties and liabilities as such  should be exempt from the excise tax on the privilege of carrying on their business merely because such a slight measure of control may be vested in the beneficiaries that they might be deemed strict trusts within the rule established by the Massachusetts courts.
That the Crocker Association is engaged in carrying on business within the meaning of the Act, is obvious. And so of the Hecht and Haymarket Trusts. A corporation *162 owning and renting an office building is engaged in business within the meaning of an excise statute. Flint v. Stone Tracy Co., supra, p. 171; Zonne v. Minneapolis Syndicate, supra, at p. 190.
4. It is urged, however, by the trustees of the Crocker Association that they are not subject to an excise tax under the Act of 1918, because the tax imposed on a domestic "association" is measured by "the fair average value of its capital stock"; the argument being that this tax, of necessity, can apply only to "associations" having a fixed "capital stock" represented by shares, that is, a designated share capital whose amount is fixed by the articles of association or trust agreement. Hence, it is insisted, the tax cannot apply to this Association, which, it is claimed, has no "capital stock" within the meaning of the Act. The trustees of the Hecht Trust do not make this contention.
The certificates in this Association, as stated, have no par value; the shares being for ninety-six thousandths of the beneficial interest in the property. No "capital" account is kept by the trustees; but they have a profit and loss account, in which they are charged with all the property transferred to them, at a valuation, against which liabilities and reserves are shown, the balance being carried as the net interest of the shareholders. And their books show the "dividends" disbursed to shareholders. The amount of the present tax was assessed by the Collector by taking the fair value of the assets of the Association over its liabilities, and calling the difference its capital stock.
It is true that, generally speaking, in the technical sense, the capital stock of a corporation is a sum fixed by its corporate charter as the amount paid or to be paid in by the stockholders for the prosecution of the business of the corporation and the benefit of its creditors. 1 Cook on Corporations, 7th ed., 38, and cases cited in note 2. *163 However, in statutes relating to taxation, sometimes drawn without regard to the technical meaning of the words, the courts will construe "capital stock" to mean the actual property of the corporation, when necessary to carry out the intent of the statute. Ib. p. 39; Security Co. v. Hartford, 61 Conn. 89, 101; Henderson Bridge Co. v. Commonwealth, 99 Ky. 623, 641. And see People v. Coleman, 126 N.Y. 433, 439.
We think that in the Act of 1918, in which the tax upon an association is based upon the average value of its "capital stock," including surplus and undivided profits, these words are not to be given a technical meaning, but should be interpreted, in their entirety, and, in the absence of a fixed share capital, as equivalent to the capital invested in the business, that is, the net value of the property owned by the association and used in its business. As was said by the Circuit Court of Appeals, the phrase in the statute as to "`including surplus and undivided profits' puts beyond doubt the question of the congressional intent to measure this tax by business and financial realities, not by bookkeeping forms or mere names." And this construction is in harmony with the provision as to the excise tax on a foreign association, which is fixed upon the value "of the capital actually invested in the transaction of its business in the United States."
We therefore conclude that the Crocker Association was also subject to the tax, and that this was properly measured by the Collector by the net value of its property  no question being made as to the correctness of his valuation.
5. A question remains in Cases Nos. 100 and 119  which has not been argued by counsel  as to the taxes for the years ending June 30, 1919, which were assessed against the trustees of the Haymarket Trust and the Crocker Association under the Act of 1916, and paid by them before the passage of the Act of 1918. The latter Act, which was approved and became effective February *164 24, 1919, was retroactive in its provisions and covered the year ending June 30, 1919 (40 Stat. 1126). Thereafter additional taxes were assessed against the trustees, representing the differences between the amount of the taxes which they had paid under the Act of 1916 and those prescribed by the Act of 1918. See note 2, p. 146, supra.
In view of the retroactive provision of the Act of 1918, we are of opinion that the taxes for the year ending June 30, 1919, cannot now be recovered, even though originally their assessment under the Act of 1916 was unauthorized, since they thereafter became due under the Act of 1918; and that they may now be retained by the United States. See Anderson v. Loan & Trust Co. (C.C.A.), 241 Fed. 322, 325, and New York Life Ins. Co. v. Anderson (C.C.A.), 263 Fed. 527, 530; also Crocker v. Malley, supra, at p. 235.
The decrees of the Circuit Court of Appeals are accordingly affirmed in cases Nos. 100, 101, and 119; and in No. 99 affirmed as to the taxes assessed for the years ending June 30, 1919, and June 30, 1920, and reversed as to those assessed for the six months ending June 30, 1917, and the year ending June 30, 1918.
Affirmed in part.
Reversed in part.
MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS took no part in the decision of these cases.
NOTES
[1] The date of this Act is February 24, 1919.
[2] In No. 99 the trustees of the Hecht Trust were assessed under the Act of 1916 with taxes for the six months ending June 30, 1917, and the year ending June 30, 1918; and under the Act of 1918 for the years ending June 30, 1919, and June 30, 1920. In No. 100 the trustees of the Haymarket Trust were assessed under the Act of 1916 with a tax for the year ending June 30, 1919; and in No. 101 they were assessed under the Act of 1918 with an additional tax for the year ending June 30, 1919, and a tax for the year ending June 30, 1920. In No. 119 the trustees of the Crocker Association were assessed under the Act of 1916 with a tax for the year ending June 30, 1919, and under the Act of 1918 with an additional tax for the same year.
[3] Such trusts also exist in other States. See generally, as to their characteristics, Sears' "Trust Estates as Business Companies," and Wrightington's "Unincorporated Associations."
[4] By c. 441 of the Acts of 1909, the trustees of "a voluntary association under a written instrument or declaration of trust the beneficial interest under which is divided into transferable certificates of participation or shares," are required to file copies of the instrument of trust with designated public officers; and by c. 184 of the Acts of 1916, such associations may be sued for debts, obligations, or liabilities, and their property may be subjected to attachment and execution as if they were corporations. See 2 General Laws, 1921, c. 182.
[5] Provisions referring to Alaska and the District of Columbia and to certain deductions, which are immaterial for present purposes, are omitted in this and subsequent citations.
[6] Sub-section (c) provides that the tax imposed by this section shall not apply in any year to any corporation which is not engaged in business.
[7] These excise tax provisions of the Revenue Act of 1918 are reenacted, in like terms, in the Revenue Act of 1921, 42 Stat. 227, 294.
[8] In the present cases the Circuit Court of Appeals said: "It is a matter of common knowledge that, for most business and financial purposes, all the larger organizations of this sort have for years been indistinguishable from corporations. One might almost say that they are a device under which parties make their own corporation code. Business concerns so organized have come to occupy a large field in industry and in finance. At least two substantial text-books have been written on the law concerning such organizations and dealing with their advantages for general business purposes. . . . In Dana v. Treasurer, 227 Mass. 562, 565, it appears that the Amoskeag Manufacturing Company, commonly known to be one of the largest enterprises in New England, is so organized. The Pepperell Manufacturing Company, before this court in Malley v. Bowditch, supra, had a capitalization of over $7,500,000; the Crocker Trust operates large paper manufacturing mills, employing about 1,000 men, with gross assets of over $10,000,000." 281 Fed. at p. 370.