ANDERSON STEAM VULCANIZER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3683. Promulgated April 6, 1927.

1. An organization *held*, in view of the agreement of its creation, to be an association taxable as a corporation.

2. Patent value not proven *held* properly excluded from invested capital.

*Leroy Sanders, Esq.*, for the petitioner.
*William S. DeLaney, Esq.*, for the respondent.

Deficiencies of income and profits taxes of $62.36 for 1918, $3,440.50 for 1919, and $2,116.50 for 1920, the petitioner claiming a patent value as the basis for exhaustion deductions, and, as to 1920, that it was a trust and not taxable as a corporation.

#### FINDINGS OF FACT.

In September, 1916, an Ohio corporation was organized called the Anderson Steam Vulcanizer Co. In 1919 an Indiana corporation of the same name was organized. On December 26, 1919, a so-called "agreement and declaration of trust" was made, and the name "Anderson Steam Vulcanizer Company" was recited and used as the designation of the so-called trustee.

Thomas Bemis became a stockholder of the Ohio corporation in June, 1917, and its assets were a patent and a small machine shop. It was not in good financial condition at that time. The business had needed money and Bemis had loaned it some. Its capital stock at that time was $50,000 common and $500 preferred. This stock was shown by the corporation's records to have been issued in 1916 for

**738**   6 U. S. BOARD OF TAX APPEALS REPORTS.   (737)

a patent applied for but not yet issued. Prior to the issuance of the stock the inventor had been manufacturing vulcanizers, but the earnings therefrom are unknown. The patent was first issued in May, 1918, and was reissued October 23, 1923. The reissue was to improve certain claims. The reissue contains the following:

Newton Merritt Anderson, of Indianapolis, Indiana, assignor, by mesne assignments, to Thomas Bemis, Sr., Thomas Bemis, Jr. and Ruth Bemis, trustees of Anderson Steam Vulcanizer Company, of Indianapolis, Indiana, a real trust.

Vulcanizer.

Original No. 1,266,901, dated May 21, 1918, Serial No. 90,180, filed April 10, 1916. Application for re-issue filed September 6, 1919. Serial No. 322,191.

The aforesaid "Agreement and Declaration of Trust" is as follows:

THIS AGREEMENT made this 26th day of December, 1919, by and between Thomas Bemis, Sr., Thomas Bemis, Jr., Lucette Bemis, Pearl Bemis, Ruth Bemis, and Julia E. Bemis, together with his or their assigns, herein designated "Subscribers" and Thomas Bemis, Sr., Thomas Bemis, Jr., and Ruth Bemis together with their successors, herein designated "Trustees",

WITNESSETH, That Whereas the subscribers propose to transfer, assign and deliver to the Trustees, under the designation of Anderson Steam Vulcanizer Company certain property, patents, rights detailed and described as follows:

All the property real, personal and mixed, including patents, tools, machinery, good will and business of Anderson Steam Vulcanizer Company, a corporation, all as more fully appears and is shown in proper assignments, bill of sale or deed therefor, and a schedule identified by the signature of the parties hereto in papers properly executed and filed with the trustees, and the trustees for the purpose of defining the interests of the subscribers, and their assigns in such property, have agreed to issue to the subscribers and their assigns negotiable certificates for One thousand (1000) shares, of which none shall be preferred and all shall be common, each share to be expressed of the par value of One Dollar ($1.00), and all of said shares to be issued to the subscribers or their assigns in the following proportions, viz: in such amounts as they may have heretofore mutually agreed with their assigns in the preliminary organization.

Now, THEREFORE, the trustees hereby declare that they will hold said property, patents and rights, so to be transferred to them, as well as all other property, patents, or rights which they may acquire as trustees, together with the proceeds and profits thereof, in trust; to manage and dispose of the same for the benefit of the holders from time to time of the certificates of shares issued hereunder, according to the equitable value or priorities that may be expressed therein, and in manner and subject to the stipulations herein contained, to wit:

First: It is the intention of the parties hereto to create a real trust and not an association or a partnership. All property and rights of the Company are the property of the Trustees and they are the masters.

Second: The trustees in their collective capacity shall be designated so far as practicable as Anderson Steam Vulcanizer Company and under that name shall, so far as practicable, conduct all business and execute all instruments in writing in performance of their trust.

Third: (a) The trustees shall always be three in number and the trustees herein mentioned shall hold their office from the organization of the Company until the final liquidation thereof. In case of death, resignation or inability to act of any trustee, the remaining trustees shall accept any resignation and fill the vacancy. In case the remaining trustees shall be unable to agree upon a successor or successors to fill such vacancy, then such remaining trustees or trustee, shall call a meeting of the shareholders, who shall elect a trustee or trustees to fill such vacancy or vacancies. As soon as any trustee elected by the trustees, or by the shareholders to fill a vacancy, shall have accepted this trust, the trust estate shall vest in the new trustee or trustees, together with the remaining trustees, without any further act of conveyance.

(b) In case of the death, resignation, or inability to act of all of the trustees, then any shareholder may call a meeting of the shareholders, who shall at such meeting, select a new board of trustees, and upon the acceptance by said new board of this trust, the trust estate shall vest in such new board without any further act of conveyance.

Fourth: (a) The trustees shall hold the legal title to all property and rights at any time belonging to their trust, and shall have and exercise the exclusive management and control of the same; they shall assume all contracts for and obligations and liabilities in connection with or growing out of the property rights, securities or things of value assigned to them by the subscribers and the management of the same, as before specified, and to the extent of the value of such rights, property and business, but not personally, shall agree to hold the subscribers and any persons associated or acting with them, harmless and indemnified from and against any loss, cost, expense or liability, by reason of, or in connection with any such contract, obligation or liability; they may adopt and use a common seal; they may collect, sue for, receive and receipt for all monies at any time coming due to said trust; they may employ counsel to begin, prosecute, defend and settle suits at law, equity or otherwise; with the consent of all their members given at a meeting called for that purpose, but not otherwise, they may borrow money for purposes incidental to the proper management and conduct of said trust, and may pledge the property of said trust in such manner as they may deem best, to secure said loan, but said borrowings shall not exceed in the aggregate Fifty Thousand Dollars ($50,000.00) ; they may buy, sell, hold, exchange, mortgage or convey real estate or personal property, patents, leases or equities therein wherever situated; they may manufacture, buy, sell or trade generally in goods, wares, merchandise and personal property of any and every class and description and wherever situated.

They may especially carry on and transact the business of the manufacture and sale of vulcanizers, metal castings, tools, machines and machinery, mechanical devices and contrivances of all kinds, and parts thereof and therefor, and materials and supplies for same; to buy and sell merchandise similar to that manufactured; to do any and all kinds of machine work, and use any and all kinds of power required to operate such plant or plants, to purchase, sell and dispose of bonds, stocks and other securities, and patents.

They shall have power to vote in person or by proxy upon all shares of the capital or stock of any company or corporation at any time belonging to the trust; to acquire the good will, stock, securities, rights, patents and property of any person, firm, association, company or corporation ; to pay for the same in cash, the certificates of shares of the capital of this company, in bonds, notes, preferred shares, property or otherwise; to hold or in any manner to dispose of the whole or any part of the property or rights so purchased; to con-

duct in any manner the whole or any part of any business so acquired and to exercise all the powers necessary or convenient in and about the conduct and management of such business.

(b) So far as strangers to this trust are concerned, a resolution of the trustees authorizing a particular act to be done, shall be conclusive evidence in favor of such strangers that such act is within the powers of the trustees, and no purchaser from the trustees or one loaning money to the trustees shall be bound to see the application of the purchase or loaned money or other consideration paid or delivered by or for said purchaser or loaner to or for said trustees.

Fifth: Stated meetings of the trustees shall be held at least once every twelve months, and other meetings shall be held from time to time upon the call of any officer or any two trustees. A majority of the trustees shall constitute a quorum, and the concurrence of all the trustees shall not be necessary to the validity of any action done by them, but the wish of a majority of the trustees present and voting at any meeting shall be conclusive except as hereinbefore provided. The trustees may make, adopt, amend or repeal such by-laws, rules and regulations, not inconsistent with the terms of this instrument, as they may deem necessary for the conduct of their business, or for the government of themselves, their agents or representatives.

Sixth: (a) The trustees may elect officers with the authority and duties usually incident to like officers in corporations or associations, or such duties as the trustees may determine or fix. Two of such officers elected, at least, shall be from their own members. The trustees shall have authority to elect temporary officers to serve during the absence or disability of regular officers; to employ such agents, servants, attorneys and employees as they may deem necessary; to fix the compensation of any or all the officers or agents or servants they may employ or appoint, and are likewise authorized to pay themselves such compensation for their services as they may deem reasonable.

(b) The trustees shall not be liable for errors of judgment, either in holding property originally conveyed to them, or in acquiring and afterwards holding additional property, nor for any loss arising out of any investment, nor for any act or omission to act performed or omitted by them in the execution of their trust in good faith, nor shall they be liable for any of the acts or omissions of each other or of any officer, agent or representative or servant appointed by or acting for them, and they shall not be obligated to give bond to secure the due performance of this trust by them.

Seventh: (a) Shares hereunder shall be expressed of the par value of One Dollar ($1.00) each, and excepting the shares hereinbefore provided for issue to the subscribers, or their assigns, shall in the discretion of the trustees be issued, either as common or preferred shares, as hereinafter provided.

(b) As an evidence of the ownership of such shares, the trustees shall cause to be issued to each shareholder a negotiable certificate or certificates, which certificates shall be in manner of form as determined by the trustees.

Eighth: (a) In addition to the shares to be originally issued to the original subscribers, as hereinbefore provided, the trustees may, for the purpose of acquiring additional funds, or for carrying out the purposes and business of their trust, issue and sell at public or private sale, upon such terms and for such price as they may deem expedient additional shares, each share of which shall be of the par value of those of the original issue, and which shares may be all common or all preferred shares, or may be part preferred and the balance common shares.

(b) In case any preferred shares shall be issued by the trustees, the holders of such shares may, in the discretion of the trustees, be given pre-

ferred claim to the net earnings or profits of the trust, in amount not exceeding a cumulative dividend at the rate of eight (8) per cent per annum, and payable before any dividend shall be declared or paid to the holders of the common shares, and in case a dividend shall be declared on the common shares in excess of eight (8) per cent per annum, said preferred shareholders may, at the discretion of said trustees, be entitled to receive an additional dividend upon such preferred shares to make the dividend declared thereon equal to the dividend declared during said year on the common shares. In case of liquidation, such shareholders may be fully secured by first claim to the proceeds of the liquidation, and also, such shares may be made subject to redemption at not less than par, as provided in such certificates.

(c) Except as aforesaid no shares shall be issued by the trustees, in excess of the amount originally issued to the subscribers, as hereinbefore stated.

(d) In case of loss or destruction of any certificate of shares issued by the trustees, the trustee may, under such conditions as they may deem expedient, issue new certificates for such shares in place of those lost or destroyed.

Ninth: The trustees may from time to time declare and pay dividends out of the net earnings from time to time received by them, but the amount of such dividends and the payment of them shall be wholly in the discretion of the trustees; except that dividends on any preferred shares issued by the trustees shall be payable annually on the first days of January and July in each year, and the surplus earnings or profits shall not be maintained as a separate fund but shall be merged into the body of the trust estate.

Tenth: The fiscal year of the trustees shall begin on the 1st day of January in each year, and end on the 31st day of December in each year, beginning with the year 1920.

Eleventh: (a) Special meetings of the shareholders may be called at any time upon ten days' notice, given by mail to each shareholder at his or her registered address at least ten days before said meeting.

(b) At all meetings of the shareholders, each holder of shares shall be entitled to one vote for each share held by said holder, and any shareholder may vote by proxy.

(c) No business shall be transacted at any special meeting of the shareholders unless notice of such business has been given in the call for the meeting.

(d) No business except to adjourn shall be transacted at any meeting of the shareholders unless a majority of all the shares outstanding are present in person or by proxy.

(e) The trustees may from time to time refer any matter or question to a meeting of the shareholders, for their recommendation as to the course to be pursued by the trustees, in the transaction of any business for the trust.

Twelfth: (a) The death of a shareholder or trustee during the continuance of this trust shall not operate to determine the trust, nor shall it entitle the legal representative of the deceased shareholder to an accounting, or to take any action in the courts or elsewhere against the trustees; but the executors, administrators or assigns of the deceased shareholder shall succeed to the rights of said decendent under this trust upon surrender of the certificate for the shares owned by him.

(b) The ownership of shares hereunder shall not entitle the shareholder to any title in or to the trust property whatsoever, or right to call for a participation or division of the same, or for an accounting, or for any voice or control whatsoever of the trust property or of the management of the trustees.

Thirteenth: (a) The trustees shall have no power to bind the shareholders personally, and the subscribers and their assigns and all persons or corporations extending credit to, or contracting with, or having any claims against the trustees shall look only to the funds and property of the trust for payment under such contracts or claims, or for any debts, damages, judgments or decree, or for any money that may otherwise become due and payable to them from the trustees, so that neither the trustees nor the shareholders, present or future, shall be personally liable therefor.

(b) In every written order, contract or obligation which the trustees shall give or enter into, it shall be the duty of the trustees to stipulate that neither the trustees nor the shareholders shall be held to any personal liability under or by reason of such contract, order or obligation..

Fourteenth: (a) This trust shall continue from the date hereof for a term of fifty (50) years, at which time the trustees shall proceed to wind up its affairs, liquidate its assets, and distribute the same among the holders of the shares according to the values and priorities therein expressed; PROVIDED, HOWEVER, that if prior to the expiration of said period, the said trustees shall call a meeting of the shareholders, and at said meeting the holders of at least two-thirds of the shares then outstanding shall recommend and vote to terminate or continue in existence for a further like period or such shorter period as may then be determined, then said trust shall either terminate or continue in existence for a further like period or such shorter period.

(b) For the purpose of winding up the affairs and liquidating the assets of the trust, the then trustees shall continue in office until such duties have been fully performed.

(c) This Agreement and Declaration of Trust may be altered or amended except as regards the liabilities of the trustees or shareholders at any special meeting of the shareholders with the consent of the holders of at least two-thirds of the shares then outstanding; provided notice of the proposed amendment or alteration shall have been given in the call for the meeting, and said amendment or alteration approved by said trustees, and said amendment or alteration shall be certified by the chairman of such meeting, and countersigned by at least one of the trustees, and shall be attached to and made a part of this agreement, and a copy thereof shall be filed with the Recorder of Deeds or other official where this instrument has been filed.

The subscribers were the family of Thomas Bemis, Sr., and his wife, each owning one-sixth of the shares. The trustees owned one-half the shares. The agreement has been carried out. All documents were signed "Anderson Steam Vulcanizer Co., Thomas Bemis, secretary-treasurer."

Dividends were authorized of the 1920 earnings and the shareholders included in their individual income their distributive shares.

OPINION.

STERNHAGEN: The petitioner contends that in 1916 it acquired a patent right worth $50,000 for stock of that value and that it has the right to annual deductions for patent exhaustion on this basis. The value of the patent was not proven and hence there is no cost basis for depreciation.

The agreement of December 26, 1919, sets up an association essentially similar to that considered in *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110, and held to be taxable as a corporation. Petitioner's counsel in his brief makes no reference to this case. We hold the organization to be an association within the meaning of the Revenue Act of 1918. See *Hecht* v. *Malley*, 265 U. S. 144.

There is furthermore a question as to parties. If, as contended, the petitioner is in reality three separate entities, how can they be joined as a single petitioner by one verified petition?

*Judgment will be entered for the respondent.*

ARUNDELL not participating.