*529 OPINION.
Seawell:
The primary question at issue arises on account of the Commissioner’s determination that the petitioner was during the years in question not a trust, taxable- under section 219 of the Revenue Acts of 1924 and 1926 and sections 161 and 162 of the Revenue Act of 1928. but an association within the meaning of that term as used in section 2 (a) (2) of the Revenue Acts of 1924 and 1926 and section 701 (a) (2) of the Revenue Act of 1928, and therefore taxable as a corporation.
In form of organization the trust here involved is almost identical with that considered in Zenith Real Estate Trust, 21 B. T. A. 656; in fact, some of the same trustees and the same agent of the trustee appear in each case and so great is the similarity between the cases that the petitioner submitted as a brief in this proceeding the brief which had theretofore been submitted by it to the Circuit Court of Appeals to which appeal had been taken from the Board in the Zenith case. Since a decision was had on December 9, 1931, from the Circuit Court in the Zenith case (Tyson v. Commissioner, 54 Fed. (2d) 29), in which the action of the Board was reversed, we think it pertinent to discuss the case at bar from the point of view of the court in that case.
The argument of the taxpayer in the Zenith case, as directed to the Circuit Court, was largely that a trust “ should be taxed as a corporation only when ‘in form and effectiveness’ it actually resembled a corporation.” In reaching its conclusion the court said:
Probably the best test is to he found in the activities of the entity. One could readily conceive of a Massachusetts trust being possessed of powers and so exercising them that for taxation purposes it should be called a corporation. An illustration of this is to be found in Trust No. 5833, Security-First Nat. Bank v. Welch, 50 F. (2d) 613. Likewise, it is easy to conceive of a Massachusetts trust so designed and so purposed as to be considered a trust as that term is used in the Revenue Acts. For an illustration of this, see Lansdowne *530 Realty Trust v. Commissioner of Internal Revenue, 50 F. (2d) 56. It necessarily follows then, and numerous decisions sustain this view, that m determining when a trust is an association courts must look to the substance rather than the form of the entity used to carry on the business. Likewise, it must be more imfluenced by the instrument’s activities than the ascertainment of the possible field of its activity. (Gardiner v. United States, 49 F. (2d) 992; Little Four Oil & Gas Co. v. Lewellyn, 35 F. (2d) 149; Lansdowne Realty Trust v. Commissioner, 50 F. (2d) 56). This does not mean that we should not look to the articles of agreement which brought the entity into being. Am examination of this document will aid a court in construing the activities and in weighing the taxpayer’s asserted intention respecting its activities. [Italics supplied.]
That is, if we understand the court correctly, the emphasis is to be placed on the activities of the trust rather than its form, and apparently had it not been for the very limited purpose and activity of the trust a different conclusion would have been reached. In applying the principles outlined above and deciding that the trust in question was not taxable as a corporation, the court emphasized the fact that while the articles of agreement suggest that “the counsel drawing the articles entertained for it somewhat pretentious hopes for its future enlargement,” the witnesses testified that “ it was conceived and brought into existence for the single purpose of acquiring a single piece of real estate; that such real estate had been leased for a long period to a responsible lessee; and that the said lessee kept the property in repair and paid the taxes in addition to the rental.” (Italics supplied.) The court further observed:
* * * In short, the investment was one which provided with reasonable certainty for a sure and fixed income without either care or supervision. They also say this plan was never departed from, save once when $5,000 of the income was invested in bonds. This departure, however, was also for the purpose of making more certain said income. The insertion in the articles of agreement that the trustees might purchase other property may be ascribed to the caution of counsel to take care of the unforeseen and unforeseeable rather than to impeach the witnesses who testified respecting the promoters’ intentions to limit the trust to a single investment, the return from which was to furnish a fixed and' steady income for the beneficiaries.
But in the case we are considering there was no such singleness of purpose and activity; on the contrary, the articles of agreement not only provide for “ pretentious hopes of enlargement,” but those hopes were realized. The trust agreement was executed in 1890 and by 1893 land had been acquired and a building erected thereon at a cost of approximately $1,000,000. The building was then leased under a net rental agreement similar to that involved in the Zenith case, and were this the one transaction before us, that is, if the single purpose of the trust had been to acquire and lease that building in *531 that manner and if we were now concerned with the income only from that building, it might well be said that the decision of the Circuit Court of Appeals would require a holding that the trust is not taxable as a corporation. The record, however, shows that the aforementioned transaction was but one of several of a similar nature carried out by the trust. We find that the trust owned and had under lease three buildings during the years here involved. One of the buildings was that referred to above, a second building was constructed about 1898, and a third in 1924 and 1925 on land acquired shortly prior thereto. Whether other land was acquired and buildings erected thereon we do not know, but it does appear that five other pieces of real estate were acquired and disposed of prior to the years before us. The original funds for the use of the trust were obtained through the sale of interests in the form of “ receipts.” The authorized capitalization was $5,000,000, though the amount issued was only $2,500,000, and that amount had been outstanding at least since 1902. Prior to that time the Monadnock Building had been constructed at a cost of approximately $1,000,000 and since that time the Cable Building and the Hartman Building were constructed at the respective costs of approximately $400,000 and $2,500,000. In addition, five other pieces of real estate were purchased and sold. By June 30, 1929, all buildings had been entirely paid for. All buildings were leased under net rental agreements, though we find for each year substantial expenses incident to the operation of the trust. For example, in the profit and loss statement which we set out in our findings for the fiscal year ended June 30, 1926, the expenses for the operation of the Monadnock Building were $3,638.46; those for the Cable Building, $3,000.08; and those for the Hartman Building, $13,246.64. In addition, “ legal and miscellaneous ” expenses amounted to $2,715.02 and “ interest on mortgage loans,” $41,250. Evidently, therefore, we do not have a simple case of a trust investing funds furnished it by its members in a single business venture, passively collecting the income from such investments under net rental agreements and distributing the proceeds to the beneficiaries, such as was involved in the Zenith case, but rather a trust which, while in form of organization similar to that involved in the Zenith case, was carrying on business through recurring investments in real estate from the profits — at least in a substantial part — derived from the trust operations and the operation of the buildings acquired by it. In fact, it would seem that in every sense of the word the “ pretentious hopes of future enlargement ” referred to by the Circuit Court of Appeals in its decision in the Zenith case were here fully realized. The original funds which were paid in for *532 investment were all paid in more than twenty years prior to the taxable years with which we are concerned, and had been used — in large part at least — in other ventures, but yet we find that in the first year before us, namely, the fiscal year ended June 30, 1925, the trust constructed a building at a cost, including cost of land acquired shortly prior thereto, of approximately the entire original investment of $2,500,000. During the succeeding years from 1925 to 1929 the indebtedness on the building was paid off, partly at least, through the sale of bonds in which its sinking fund had been invested. That the greater part of the trust activities were carried on by the firm of Aldis & Company does not seem to us material. Not only was the firm the agent of the trustees, but also it was closely associated with them, since at least one of the trustees was a member of that firm.
In view of the above considerations and the record as presented, we are of the opinion that the trust here involved satisfies every requirement for an association taxable as a corporation as laid down in Hecht v. Malley, 265 U. S. 144, and the many decisions of the Board on the subject, as well as the test enunciated by the Circuit Court of Appeals of the Seventh Circuit in the Zenith case, supra, to the effect that the “ best test is to be found in the activities of the entity.” Our conclusion that the trust is to be considered an association taxable as a corporation makes a decision unnecessary on the further issue raised by the petitioner, as to the taxability to the trust of the income which was not distributed by it to the beneficiaries.

Judgment will he entered for the respondent.