F. E. McGLONE ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 22400–22418, 22427–22429, 22464, 22496, 22532, 23594, 23595, 24486.

Promulgated February 25, 1931.

---

[1] Other parties petitioning whose proceedings have been consolidated for hearing and decision herewith are: Frank M. Linnell; W. D. Lindaman; E. G. Hobert; W. H. Langlas; H. G. Duckwitz; H. E. Brouillard; O. C. Hunter; C. L. Holden; George H. Burns; George S. Smith; Mrs. T. F. Burns; W. B. Klinetop; T. J. Keefe; W. H. Brunn; J. M. Burns; Walter J. Fluent; J. C. Campbell; Gus O. Michell; A. M. Brouillard; Glenn S. Michell; C. M. Hansell; J. M. McLeod; L. C. Bradbury; J. A. Koebrich; P. L. Bryant; B. R. Hammond; Ray Angell.

*J. C. Campbell, Esq.*, for the petitioners.
*W. F. Wattles, Esq.*, for the respondent.

OPINION.

LANSDON: These are proceedings under section 280 of the Revenue Act of 1926. The respondent asserts that the petitioners are liable at law and/or in equity for the payment of a deficiency in income and profits taxes and a fraud penalty assessed by the respondent for the year 1919, against the Iowa-Burk Syndicate, hereinafter referred to as the Syndicate, in the total amount of $142,672.28. The respondent abandons the issue of fraud, which leaves in controversy only the deficiency of $95,114.85, resulting from the respondent's determination that the Syndicate was an association taxable as a corporation. The liabilities asserted by the respondent against these petitioners as transferees are as follows:

| Docket No. | Name | Amount | Docket No. | Name | Amount |
|---|---|---|---|---|---|
| 22400 | F. E. McGlone | $1,975.00 | 22414 | W. H. Brunn | $11,060.00 |
| 22401 | Frank M. Linnell | 790.00 | 22415 | J. M. Burns | 29,625.00 |
| 22402 | W. D. Lindaman | 1,975.00 | 22416 | Walter J. Fluent | 1,975.00 |
| 22403 | E. G. Hobert | 1,975.00 | 22417 | J. C. Campbell | 15,207.50 |
| 22404 | W. H. Langlas | 1,975.00 | 22418 | Gus O. Michell | 3,950.00 |
| 22405 | H. G. Duckwitz | 1,975.00 | 22427 | A. M. Brouillard | 7,406.25 |
| 22406 | H. E. Brouillard | 29,625.00 | 22428 | Glenn S. Michell | 1,975.00 |
| 22407 | O. C. Hunter | 1,481.25 | 22429 | C. M. Hansell | 790.00 |
| 22408 | C. L. Holden | 3,950.00 | 22464 | J. H. McLeod | 1,975.00 |
| 22409 | George H. Burns | 7,406.25 | 24486 | L. C. Bradbury | 790.00 |
| 22410 | George S. Smith | 987.50 | 22496 | J. A. Koebrich | 1,975.00 |
| 22411 | Mrs. T. F. Burns | 790.00 | 23532 | P. L. Bryant | 1,185.00 |
| 22412 | W. B. Klinetop | 1,975.00 | 23594 | B. R. Hammond | 790.00 |
| 22413 | T. J. Keefe | 987.50 | 23595 | Ray Angell | 790.00 |

The record in these proceedings, which have previously been consolidated by order for hearing and decision, includes a stipulation of facts entered into by the parties and filed at the hearing, which we incorporate by reference as a part of this report. The parties have stipulated that the amounts actually received by these petitioners upon liquidation of the Syndicate were identical with the liabilities asserted, except as to the petitioners Frank M. Linnell, who received only $395; W. B. Klinetop, who received only $1,580; J. H. McLeod, who received only $1,185; and Ray Angell, who received only $395, so that there is no question as to their transferee liability.

The issues raised by the pleadings will be discussed in the following order: (1) Is the respondent barred by the statute of limitations from proceeding against these petitioners as transferees of the Syn-

dicate? (2) Are the provisions of section 280 (a) and (b) of the Revenue Act of 1926 unconstitutional? (3) Is the Commissioner of Internal Revenue estopped from asserting the present tax liability when, before the sale of the property, the Solicitor of the Bureau of Internal Revenue advised a representative of the Syndicate that it was a joint adventure or copartnership and would not be subject to income or profits taxes, and the members, relying upon such advice, sold the property? (4) Was the Syndicate an association taxable as a corporation?

In September, 1918, four individuals, J. C. Campbell and J. M. Burns, of Charles City, Iowa, and H. E. Brouillard and R. E. Wade, of Wapanucka, Okla., acquired an oil and gas lease on 10 acres of land in the northwest extension of the Burkburnett field, near Wichita Falls, Texas, at a cost which is not clear from the record, the stipulation of facts stating $200 per acre and the testimony showing $300 per acre, but as to which there is no controversy. At that time Wade and Brouillard, who are relatives of Burns, were operating a small bank in Wapanucka, Okla. Burns was conducting a grocery store in Charles City, Iowa, and Campbell was a practicing attorney in Charles City. None of the four individuals had had any experience in the oil business.

Within a few months after the lease was purchased, the Burkburnett field experienced a great boom, and these individuals became enthusiastic over their possibilities of profit. Not having sufficient funds with which to drill a well, the cost being approximately $30,000, they determined to sell an undivided one-half interest in the lease to raise the necessary capital. Accordingly, on January 2, 1919, they entered into the following agreement:

WHEREAS, J. C. CAMPBELL and J. M. BURNS of Charles City, Iowa, and H. E. BROUILLARD and R. E. WADE of Wapanucka, Oklahoma, are the owners of· a certain oil and gas lease on the following described premises situated in Wichita County, State of Texas, to-wit:

The Southwest Quarter (SW ¼) of Northwest Quarter (NW ¼) of Block No. Seventy-five (75), in Red River Valley Land Subdivision, and

Whereas, it is the desire and intention of the said parties to develop the said property by drilling on said premises for gas or oil, and

Whereas, it is the intention of said parties to sell an undivided interest in the said leased premises, the proceeds of which shall be used for the purpose of so developing the said property as above stated and as hereinafter more particularly set forth.

Therefore, it is agreed that the above named parties do hereby sell, convey and assign unto C. L. Holden, J. C. Campbell, of Charles City, Iowa, and R. E. Wade of Wapanucka, Oklahoma, as Trustees, the undivided one-half of the said described lease, it being understood that the undivided one-half interest retained by the said first named parties shall represent and be valued at Thirty Thousand ($30,000) Dollars.

That the remaining undivided one-half of the said lease shall also represent and be valued at Thirty Thousand ($30,000) Dollars, which shall be sold,

assigned and conveyed by said Trustees for the purpose of raising the said sum of Thirty Thousand Dollars.

That the interest that such purchaser shall acquire from the said Trustees shall be determined by the amount of the purchase price paid by said purchaser to said Trustees and shall be in the proportion that such payment bears to the total amount of Sixty Thousand ($60,000) Dollars.

That the said Trustees shall execute conveyance and assignment of said undivided interest to said purchaser and shall receipt to said purchaser for money received and shall well and truly account for said money and shall furnish a surety bond in the sum of Thirty Thousand ($30,000) Dollars.

That the said Trustees shall act as such until such time as sufficient funds are raised for the purpose of drilling and developing the said described property. When such funds are so raised a meeting shall be called of all of the parties interested in said lease and the owners thereof shall elect trustees who shall hold office for one year or until their successors are elected.

It is understood and agreed that the money so paid to the trustees shall be used for the purpose of drilling a well or wells and developing the said oil and gas wells for the purpose of paying the premium on the surety bond heretofore referred to and all other legitimate expenses.

That any money remaining on hand unexpended for the purpose of drilling said well or wells, and the other purposes hereinbefore mentioned shall be returned by the said trustees to the said purchasers in proportion to the amount paid by each.

It is also agreed that each of said prospective purchasers shall participate in proportion to the interest that they hold and own in the said property in the net profits realized or derived from said described property.

It is also further agreed that in case of failure to drill as above provided, then and in that event, the money so paid to the said trustees shall be returned to each purchaser.

It is further agreed that the said trustees shall have the authority to collect all moneys realized from the proceeds of the oil and other sources and after retaining sufficient for all necessary expenses, taxes, etc., shall distribute equally among all the owners, in proportion to their interest, the profits realized therefrom. Said trustees shall have the power to borrow money on the said property, and shall have the power to develop said property, by drilling other wells out of the proceeds in their hands, if in their judgment the same is deemed advisable and for the best interest of all owners interested therein.

Approximately 110 contributors to the development fund of $30,000 received, or were entitled to receive, an instrument in the following form:

(CERTIFICATE OF INTEREST)

KNOW ALL MEN BY THESE PRESENTS: That J. C. Campbell of Charles City, Iowa, R. E. Wade of Wapanucka, Oklahoma, and C. L. Holden of Charles City, Iowa, Trustees, by virtue of the power in them vested by and because of a certain trust agreement executed by R. E. Wade, H. E. Brouillard, J. M. Burns, and J. C. Campbell, and recorded in Wichita County, State of Texas, for and in consideration of the sum of ————— Dollars in hand paid by ————— of ————— County, State of ————— do hereby grant, bargain, sell and assign to ————— ————— an undivided ————— interest in and to a certain gas and oil lease covering the following described premises:

The Southwest Quarter (SW ¼) of the Northwest Quarter (NW ¼) of Block No. Seventy-five (75) of Red River Valley Lands Subdivision recorded in the office of the Register of Deeds, in Wichita County, State of Texas.

This transfer of interest is made in compliance with the provisions of the said trust agreement and the said grantee is hereby vested with all rights and privileges provided for and conferred therein.

During the short period of operation in 1919 there were numerous sales and transfers of interests, only a few of which appear on the books.

The name "Iowa-Burk Syndicate" was given to the enterprise because people from Iowa were interested in the Burkburnett oil field. It was adopted by consent without any formality, and was merely a convenient method of referring to the group of interest owners. Other than the above agreement the Syndicate had no charter or paper of any kind authorizing any form of organization or plan of operation. It had no by-laws, held no formal or recorded meetings, and had no officers or directors. Wade, who handled the money and looked after most of the business affairs, did so by common consent.

When the $30,000 had been raised, a well was drilled on the property under the direction and management of Wade. Oil was discovered in June, 1919, and as soon as possible thereafter, two other wells were drilled. The necessary money for these two wells was borrowed from the individual contributors. The lease was operated until November, 1919, when an offer of $300,000 was received for the property.

Before selling or advising sale, Wade, Burns and Campbell made a trip to Washington, D. C., where they interviewed the then Solicitor of the Bureau of Internal Revenue, seeking to ascertain whether any income and profits taxes would be due if the property were sold. After reading the above set out agreement and certificate of interest, the Solicitor assured them that since they were operating as a partnership or joint venture the profits would not be subject to the corporation tax. Shortly thereafter, in 1919, the lease was sold for $300,000 in cash, which sum, less about $40,000 held as a reserve, was distributed ratably among the interest owners.

On March 15, 1920, a partnership income and profits tax return for the period January 2 to December 31, 1919, was filed under the name of Iowa-Burk Partnership. On March 10, 1925, without previous notice to the taxpayer, the respondent made a jeopardy assessment against the Syndicate as an association, taxable as a corporation, for the sum of $142,672.28, which included a penalty of 50 per cent. About May 1, 1925, a defense was filed by Campbell with the Collector of Internal Revenue at Dubuque, Iowa, and all the funds and property of the Syndicate, which consisted of $30,000 cash and

a claim for $9,500 against Wade, were turned over to the Collector of Internal Revenue. In October, 1925, the Department rejected what it termed an offer in compromise. Campbell, acting for and in behalf of the association, permitted the Department to retain the $30,000 which he had paid. On or about November 12, 1926, the respondent sent each of the parties interested in the Syndicate a 60-day letter stating that he proposed to assess each as a transferee in an amount equal to the total liquidating dividends received by him from the Syndicate.

After the sale of the oil lease in the latter part of 1919, and the distribution to the interest holders, the Syndicate ceased to operate and since has owned no assets or property except as noted above.

There is no merit in petitioners' plea of the statute of limitations. Section 250 (d) of the Revenue Act of 1918 provides a five-year limitation period for assessment and collection of any tax due under that act. Section 280 (b) (2) of the Revenue Act of 1926 provides that if the period of limitation for assessment against the taxpayer expired before the enactment of the 1926 Act, but assessment was made within such period, then determination against the transferee may be made within 6 years after the making of such assessment against the taxpayer, but in no case later than one year after the enactment of the act, which was approved February 26, 1926. The Syndicate filed a partnership return on March 15, 1920. The amount of the deficiency and penalty determined by the respondent was assessed on March 10, 1925. The transferee liability was asserted on November 12, 1926, which was within the statutory period as extended by section 280 (b) (2). *United States* v. *Updike*, 281 U. S. 489.

The petitioners' objections to the validity of section 280 (a) and (b) of the Revenue Act of 1926 are not sustained. *Henry Cappellini*, 14 B. T. A. 1269; *Phillips* v. *Commissioner*, 42 Fed. (2d) 177; *Jaffee* v. *Commissioner*, 45 Fed. (2d) 679; *Nauts* v. *Clymer*, 36 Fed. (2d) 207.

The opinion of a former Solicitor of the Bureau of Internal Revenue that the Syndicate was not an association taxable as a corporation is not conclusive and the Bureau of Internal Revenue is not bound thereby. *Botany Mills* v. *United States*, 278 U. S. 282; *James Couzens*, 11 B. T. A. 1040; *Old Farmers Oil Co.*, 12 B. T. A. 203; *Sweets Co. of America*, 12 B. T. A. 1285; aff'd., 40 Fed. (2d) 436 and cases cited therein; *Overby* v. *United States*, 44 Fed. (2d) 268.

We now come to the principal issue to be determined in this proceeding, namely, whether the Syndicate was an association taxable as

a corporation. The facts are clear, most of them having been stipulated, and it remains only for us to determine the legal effect of the transactions and operations disclosed by the record.

The respondent has determined that the entire lease was owned and operated by an association which is taxable as a corporation under the provisions of section 1 of the Revenue Act of 1918, and that the total gain from sale of the lease constituted income to such association. We think it is clear from the facts proved that at least an undivided one-half interest in the lease was, at all times, the property of the four original owners as tenants in common. Certainly the profit accruing to their one-half interest is taxable only to them as individuals and to that extent at least the respondent erred in his determination.

Whether the owners of the other one-half interest were members of an association taxable as a corporation depends upon the character of the trust created, the powers and duties of the trustees and the nature and extent of the business, if any, carried on by them. *Hecht* v. *Malley*, 265 U. S. 144; and *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110.

Whatever may have been in the minds of the owners of this lease when they executed the trust agreement, it is clear that they conveyed a one-half interest to Holden, Campbell, and Wade, in trust, for the sole purpose of selling it and collecting the money therefor. The agreement provides, " That the said trustees shall act as such until such time as sufficient funds are raised for the purpose of drilling and devolping the said described property." When this purpose had been fulfilled the duties of the trustees ceased and thereafter as provided in the agreement, " * * * a meeting shall be called of *all of the parties* interested in said lease and the *owners thereof* shall elect trustees who shall hold office for one year or until their successors are elected." (Italics supplied.) These trustees were to have powers and duties, as stated in the last paragraph of the trust agreement, to collect money from the sale of oil and other sources, to borrow money on the lease, and to develop the property by drilling wells thereon. Such provisions assured to the purchasers that they would have a voice in selecting the management for the property, which was doubtlessly a strong selling point. There is nothing in the record to show that such plans were ever carried out. There is positive testimony that no such meeting as described was ever held and that the trustees contemplated were never elected. Throughout the period of operation Wade acted as manager merely by common consent of the other owners. The testimony cited in the respondent's brief as showing that the property was managed by the trustees, con-

sists entirely of legal conclusions and conflicting as it does with what we deem to be the proper interpretation of the trust instrument, will be given no weight.

The estate of a trustee is always commensurate with the powers conferred by the trust instrument and the purpose to be effectuated by it; or, in other words, the trustee takes exactly that quantity of interest which the purpose of the trust and its proper execution may require, and no more. The purpose of the trust having been executed, the trustee's estate ceases and title passes by operation of law to the *cestuis que* trust. 39 Cyc. 207, and cases cited therein; *Brown v. Reeder* (Md.), 71 Atl. 417; and *Temple* v. *Ferguson*, 110 Tenn. 84; 72 S. W. 455. When all the property conveyed to the trustees was sold and the $30,000 required for development had been realized therefrom, the purpose of the trust was fulfilled, the trust ceased to exist, and both legal and equitable title to the interests sold vested in the purchasers by operation of law and they became tenants in common with the other owners of the whole lease. In the absence of any partnership or other agreement their relation with each other depended solely upon their title. See Thompson on Real Property (Bobbs-Merrill Edition), sections 1769 to 1777.

The respondent lays great emphasis on the fact that many beneficiaries of the trust transferred and sold their interests. This, he says, establishes that the organization was in the nature of a corporation, since the interests in a partnership and joint adventure are transferable only by creating a new partnership or joint adventure. But these individuals owned an undivided interest in real estate, which may be transferred freely without affecting the character of the business carried on.

The facts of this case are similar to those of *Myers, Long & Co.*, 14 B. T. A. 460, where the Board held that persons associating themselves without definite organization for the development of oil and gas lands do not constitute a corporation within the meaning of the revenue acts. In that case Myers and Long sought to raise money for drilling a well by selling shares of stock under what was called a subscription agreement. In the instant case the individuals raised the necessary capital by transferring one-half of the lease to trustees who sold undivided interests therein. Cf. *Royal Syndicate*, 20 B. T. A. 255; *Terminal Properties Co.*, 19 B. T. A. 584; *Extension Oil Co.*, 16 B. T. A. 1028; *Alger Melton*, 7 B. T. A. 717; and *Ernest Woodruff*, 4 B. T. A. 842.

We think the respondent erred in his determination that these individuals were organized as an association taxable as a corporation.

*Decision will be entered for the petitioners.*