C. H. CLOVIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

G. P. ROBERTS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BLANCHE C. HOGE, AS EXECUTRIX OF THE ESTATE OF ARTHUR K. HOGE, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 68433-68435.   Promulgated May 23, 1935.

*Robert P. Smith, Esq.*, for the petitioners.
*P. M. Clark, Esq.*, for the respondent.

OPINION.

McMahon: The first question to be determined is whether respondent erred in holding that Clovis Gas Trust was, in 1929, an association within the meaning of section 701 (a) (2) of the Revenue Act of 1928,[1] and hence taxable as a corporation under the provisions of section 13 of such act. If he did err in this respect then there is no tax or interest due from the Clovis Gas Trust as an association and there is no necessity for considering the question of whether the respondent has shown that the petitioners are liable as transferees of the Clovis Gas Trust or for considering the assignment relating to the respondent's determination of the amount of income derived by the Clovis Gas Trust.

The word " association " is not defined in the revenue acts. However, in *Hecht* v. *Malley*, 265 U. S. 144, where the Supreme Court had under consideration an act of Congress providing that every corporation, association, joint-stock company, and insurance company should pay a special excise tax with respect to the carrying on or doing business, the word " association " is defined as follows:

The word " association " appears to be used in the Act in its ordinary meaning. It has been defined as a term " used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise." 1 Abb. Law Dict. 101 (1879) ; 1 Bouv. Law Dict. (Rawle's Ed. Rev.) 269 ; 3 Am. & Eng. Enc. Law (2 Ed.) 162 ; and *Allen* v. *Stevens*, 33 App. Div. 485, 54 N. Y. Supp. 8, 23, in which this definition was cited with approval as being in accord with the common understanding. Other definitions are :

" In the United States, as distinguished from a corporation, a body of persons organized for the prosecution of some purpose, without a charter, but having a general form and mode of procedure of a corporation." Webst. New Internat. Dict.

"[U. S.] An organized but unchartered body analogous to but distinguished from a corporation." Pract. Stand. Dict.

\*       \*       \*       \*       \*       \*       \*

The result in the instant proceeding thus depends upon whether the individuals comprising the Clovis Gas Trust were united or organized upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise. While prior decisions enunciate general principles and illustrate the application

---

[1](a) When used in this Act—

\*       \*       \*       \*       \*       \*

(2) The term " corporation " includes associations, joint-stock companies, and insurance companies.

thereof to the facts presented in each case, it is apparent that each case must be determined upon its own peculiar facts. *Joseph E. Swanson et al., Trustees*, 29 B. T. A. 1123; *Commissioner* v. *Duckwitz, infra;* and *Coleman-Gilbert Associates* v. *Commissioner, infra.*

Considering all the circumstances in the instant proceeding we feel constrained to hold that the Clovis Gas Trust under the agreement of January 1, 1928, was not, during the year 1929, an association taxable as a corporation. In our opinion this was a joint venture prosecuted by the Clovis family and some of their friends and neighbors. The individuals entered into an agreement providing that the properties should be held and the enterprise be conducted by trustees. However, the evidence establishes that this was merely for convenience and that the reason for using this form was because it was in common usage in the community. It appears that the agreement in question was not carried out according to its letter. No deed was ever executed transferring title to the property to the trustees as was contemplated by the agreement, and the trust agreement itself was never recorded anywhere. By the agreement the individuals became tenants in common in their ownership of the property and, so far as the record discloses, continued in such relationship without doing anything further to transfer the legal title to the trustees. If the agreement, considered together with the predecessor agreements of trust, should be deemed sufficient to vest legal title in the trustees, our holding would have to be that the trustees merely held bare legal title for the tenants in common as a mere convenience, they retaining the beneficial title as tenants in common. Obviously it would have been cumbersome and impractical to execute a conveyance to each coowner of his share of the property. *Commissioner* v. *Duckwitz, infra.* In either event they actually conducted the enterprise, not through an organization, but through an agent, C. E. Clovis. Some semblance of organization is necessary to result in an association. *Page* v. *McLaughlin, infra.* And the nature and purpose of the trust agreement should be considered in determining whether an association results. *Coleman-Gilbert Associates* v. *Commissioner, infra.* While the trust agreement in question provides for the conduct of the business of developing the oil property by the trustees, the proof definitely establishes that this was not carried out. The organization known as the Clovis Gas Trust was something of an empty shell. Neither the trustees nor the shareholders ever held meetings or elected officers. The trustees never made decisions upon the conduct of the business or directed it in any way. On the contrary, C. E. Clovis, who was the moving factor in the enterprise and lived in the vicinity of the operations, performed all necessary

functions, including the collection and disbursement of funds. By the agreement Clovis, or whoever might succeed him as secretary, was appointed attorney in fact for the coowners to sell the oil produced at such prices, to such parties and at such times as he might deem best. No one ever succeeded him as secretary. It appears that he also performed all the other necessary functions for the coowners without any objection on their part and by their consent. Decisions as to drilling and securing funds were made by C. E. Clovis and the other coowners living in the vicinity. None of the trustees lived in that locality. Notwithstanding that C. E. Clovis was, for one purpose or another, designated as attorney in fact, secretary or treasurer, as well as agent, looking at the substance rather than the form, he and not the trustees actually carried on the business of the enterprise, acting for and in behalf of the individuals who were tenants in common.

The testimony of G. P. Roberts, one of the trustees, is illuminating and shows that if any trust was ever actually created, it was merely a passive trust to hold title to the property. He testified, in part, that the agreement to sell gas was consummated by C. E. Clovis as agent and he himself was not in touch with the matter except from time to time; that he went down to the scene of operations once and saw wells drilled; that he helped to arrange the sale of gas and later the sale of the property, but he was not interested in it actively; that he never exercised the authority granted by the agreement to him as trustee to drill wells, make contracts, and sell gas; that neither the trustees of the original trust nor those of the merged trust ever held any meetings; that the form of agreement used was the form used in that community showing the respective interests of the group, as stated by C. E. Clovis, and he never went into it beyond that; that he signed the certificates of interest; that this certificate form was prepared by C. E. Clovis; that he himself had nothing to do with the preparation of it, but objected to it on the ground that there was a possibility of a change in the interest if the contributions were not continued and that the certificates might misrepresent the interest involved; that after the issuance of the certificates there was a change in the interests in regard to one well where the contributions were not received; that the distributees in the final distribution did not get the amounts called for by the certificates; that he knows of no other function that he performed as trustee during the life of this trust except signing the certificates; that there were never any meetings of the shareholders; that no officers were ever elected; that "I felt that I was in a family proposition, and, * * * that Mr. C. E. Clovis was there on the ground, and was the man that we had originally expected to run this, and he actually was running it, and

that, since he was, it would be presumptuous for me, being absent, to attempt to tell him what to do"; that he accepted what C. E. Clovis had done at all times; that there was no discrimination and no argument about it; and that, except for signing the certificates, he never exercised any function whatever other than "I would for Dr. Clovis or C. E. Clovis in any friendly capacity."

Proceedings in which somewhat similar facts and circumstances were presented are reported in *F. E. McGlone*, 22 B. T. A. 358, in which there were numerous petitioners. There, four individuals acquired an oil and gas lease and in order to obtain funds to drill a well they decided to sell an undivided one-half interest therein. They conveyed an undivided one-half interest therein to trustees and retained the other undivided one-half interest. The trustees were to sell the undivided one-half interest transferred to them. The interest purchased by any person was to be in proportion to his payment as compared with the total value of the entire lease. The trustees were to execute conveyances and assignments to the purchasers. Such trustees were to act until enough money was obtained, when, it was provided, a meeting of all the parties interested in the lease was to be called for the purpose of electing trustees to serve for one year or until their successors should be elected. It was provided that the prospective purchasers should participate in the earnings or profits in proportion to their interests. By the trust agreement the trustees had the power to collect all moneys from oil and other sources, to pay expenses, to distribute the profits proportionately among the owners, to borrow money, and to develop the property by drilling wells if deemed advisable by them. One hundred and ten individuals purchased interests from the trustees and received certificates of interest. There were sales and transfers of these interests. The enterprise was, by consent, called the "Iowa-Burk Syndicate." It had no charter, no bylaws, held no formal meetings and had no officers or directors. Wade, one of the trustees, handled the money and looked after most of the business by common consent. The lease was subsequently sold and the proceeds were distributed to the owners in proportion to their interests. The respondent determined that the syndicate was an association taxable as a corporation, determined a tax against it, and asserted liabilities therefor against the petitioners in those proceedings as transferees.

We there held that the syndicate was not an association taxable as a corporation. We stated that while the agreement provided that the purchasers did have a voice in the management through their right to elect trustees periodically, there was nothing in the record to show that this plan was carried out, that no meeting was ever held, and that Wade acted as manager by common consent. We

held that at the time the trustees sold all of the undivided one-half interest the trust ceased and that both the legal and equitable title to the interests sold vested in the purchasers by operation of law and that they became tenants in common with the other owners of the whole lease. We further stated that in the absence of any partnership or other agreement their relation with each other depended solely upon their title.

The Commissioner prosecuted a petition for review against one of the petitioners in that case, Duckwitz, who was one of the purchasers of an interest from the trustees, in the United States Circuit Court of Appeals for the Seventh Circuit. The court in that case, *Commissioner* v. *Duckwitz*, 68 Fed. (2d) 629, affirmed the holding of the Board that the syndicate was not an association taxable as a corporation, and stated in part:

> If we read the evidence and the trust agreement together it seems tolerably plain therefrom that a small group of people in Charles City, Iowa, planned a simple and inexpensive method of handling a small venture in Texas oil speculation.
>
> A single tract of ten acres was the field of their operation. Nowhere was there a suggestion that the trustees or members contemplated any oil mining activities outside of this tract. Those who conceived the project planned that this local group, who were willing to back their hopes with a contribution sufficient to drill an oil well, should divide the profits. The contributions of each were so small that a conveyance of a fractional interest in the real estate would have been cumbersome and impractical. Confidence and trust in one of the members led to the deposit of money with him, which in many instances was paid without his giving the payer any written document whatever.
>
> While not determinative of the question before us, it is interesting to note that the Court of Appeals for the Eighth Circuit in the case of *Burnet* v. *Burns*, 63 F. (2d) 313, held that the four original investors were, for purposes of taxation, tenants in common and not members of an association.
>
> Under all the circumstances, we do not feel justified in disturbing the Board's finding that the interest which each investor took was an interest in the land and that they stood in the relation, each to the other, of tenants in common. In reaching this conclusion we are adhering to the rule previously announced by us in *Tyson* v. *Commr*. 54 F. (2d) 29, and *Tyson et al* v. *Commr*. 68 F. (2d) 584, decided December 15, 1933, which makes the decision in each case turn on the facts of said case. * * *

The Commissioner also prosecuted petitions for review against two of the original investors, Brouillard and Burns, in the United States Circuit Court of Appeals for the Tenth Circuit and the United States Circuit Court of Appeals for the Eighth Circuit, respectively. In *Commissioner* v. *Brouillard*, 70 Fed. (2d) 154, and *Burnet* v. *Burns*, 63 Fed. (2d) 313, those courts affirmed the decision of the Board that the four original investors were not members of an association taxable as a corporation. The Board had held that an undivided one-half interest in the lease had remained, at all times,

the property of the four original owners as tenants in common and that the profit accruing to their one-half interest was taxable to them individually. In *Burnet* v. *Burns, supra*, the court stated:

Certainly one who is a cotenant * * * does not render himself liable to pay taxes as a corporation because he permits his cotenant to manage his property and account to him for his share of the profits.

Petitions to review were prosecuted in the Circuit Courts of Appeals by the respondent against others who were petitioners in *F. E. McGlone, supra*, but they were dismissed by the courts on motion of the Commissioner. *Helvering* v. *Bradbury* (C. C. A., 6th Cir., Sept. 26, 1934); *Helvering* v. *Hammond* (C. C. A., 10th Cir.), 73 Fed. (2d) 1000; *Commissioner* v. *Holden* (C. C. A., 6th Cir., Oct. 3, 1934); *Helvering* v. *Angell* (C. C. A., 9th Cir., Oct. 8, 1934); *Helvering* v. *Linnell* (C. C. A., 9th Cir., Oct 8, 1934); and *Helvering* v. *Lindaman* (C. C. A., 8th Cir.), 73 Fed. (2d) 1000.

We see no fundamental difference in principle between *F. E. McGlone, supra*, and the instant proceedings. As to all of the petitioners in the *F. E. McGlone* case, excepting the four original owners, there is considerable basis for the view that the Commissioner made out a better case there than he has made out here. See also the following cases, where under more or less similar facts and circumstances a similar result was reached: *Myers, Long & Co.*, 14 B. T. A. 460; *Cornet & Zeibig Trust*, 21 B. T. A. 1352; *Royal Syndicate*, 20 B. T. A. 255; *Wodehouse* v. *Tarleton* (Dist. Ct., Territory of Hawaii, July 3, 1934); *Lucas* v. *Extension Oil Co.*, 47 Fed. (2d) 65, affirming *Extension Oil Co.*, 16 B. T. A. 1028; *Commissioner* v. *Coombs*, 76 Fed. (2d) 682, affirming an unreported decision of the Board; *Page* v. *McLaughlin*, 7 Fed. Supp. 75; and *Coleman-Gilbert Associates* v. *Commissioner* (C. C. A., 1st Cir.), 76 Fed. (2d) 191. In the last cited case the court stated in part:

The imposition of a double tax upon the income of a trust viz.: a tax, first, on the income of the trust as an entity, and a further tax upon the distributive shares of the beneficiaries should clearly be warranted under the Acts of Congress, and should not have as its basis some remote resemblance to a corporation. *If there is doubt, it should be resolved in favor taxpayer. Crocker* v. *Malley, supra*, p. 233; *Hecht* v. *Malley*, p. 160. To warrant a tax as a corporation, we think that not only should the trustees be actively conducting a business chiefly for profit and in the form and manner of directors of a corporation, but where there is doubt, it should not be determined wholly by a resemblance in form, but the nature and purpose of the trust agreement should be considered in determining whether a trust is an association within the intent of Congress. * * * [Emphasis supplied.]

We have not overlooked *Swanson* v. *Commissioner*, 76 Fed. (2d) 651, affirming an unreported decision of the Board, or *Monrovia Oil Co.*, 28 B. T. A. 335. They are distinguishable.

The determination of the respondent that the Clovis Gas Trust was an association taxable as a corporation during the year 1929 is disapproved.

Reviewed by the Board.

> *Decision will be entered as to each petitioner that there is no liability for taxes or interest of the Clovis Gas Trust for the year 1929.*