**LOUISVILLE PROVISION CO. et al. v. GLENN et al.**

**EMMART PACKING CO. v. SAME.**

**KLARER PROVISION CO. v. SAME.**

Nos. 1073, 1074, 1076.

District Court, W. D. Kentucky.

Feb. 11, 1937.

Woodward, Dawson & Hobson, Steinfeld & Steinfeld, Crawford, Middleton, Milner & Seelbach, William W. Crawford, George W. Norton, Jr., W. F. Baumeister, and Ben F. Washer, all of Louisville, Ky., Sparks & Sparks, of Greenville, Ky., and Wilson & Harbison, of Lexington, Ky., for plaintiffs.

Robert H. Jackson, Asst. Atty. Gen., Andrew D. Sharpe and Thomas G. Carney, Sp. Assts. to the Atty. Gen., and Bunk Gardner, U. S. Atty., and G. Oldham Clarke, Asst. U. S. Atty., both of Louisville, Ky., for defendants.

HAMILTON, District Judge.

The three above styled causes relate to the same subject matter, and for that reason this opinion is applicable to all of them, although not consolidated.

The first suit (equity No. 1073) is instituted by six corporations engaged in the business of buying hogs, cattle, and other livestock; in slaughtering, converting, and packing them into food products, and selling after manufacturing. The defendant Selden R. Glenn is the duly appointed and qualified collector of internal revenue for the District of Kentucky; defendant Bunk Gardner is United States attorney for the Western District of Kentucky; and defendant Mac Swinford is United States attorney for the Eastern District of Kentucky.

It is alleged that the plaintiffs have a common interest in the constitutional questions, and the jurisdictional amount is alleged.

The plaintiffs were all processors of hogs and taxpayers under the Agricultural Adjustment Act (Public No. 10, 73d Congress, approved May 10, 1933 [48 Stat. 31, see 7 U.S.C.A. § 601 et seq.]), which was declared void by the Supreme Court in United States v. William M. Butler et al., 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. Each of the plaintiffs al-

leges it was liable to, but did not pay, processing taxes to the collector of internal revenue after the following months:

Louisville Provision Company — December, 1934
Field Packing Company, Owensboro — January, 1935
Field Packing Company, Bowling Green — February, 1935
Henry Fischer Packing Company, — February, 1935
Eckert Packing Company, — February, 1935
Munns Bros., Inc. — March, 1935
Pennyroyal Packing Company, — April, 1935

They allege they paid into the Treasury of the United States through the collector's office, on account of processing taxes, the following sums:

Louisville Provision Company, — $213,899.22
Field Packing Company, — 118,041.98
Henry Fischer Packing Company, — 240,075.18
Eckert Packing Company, — 113,079.31
Munns Bros., Inc., — 64,946.58
Pennyroyal Packing Company, — 24,067.15

It is then alleged that each of the plaintiffs has pending in the Court of Claims suit against the United States for recovery of the respective amounts stated above. It is alleged that about the month of July, 1935, each of the plaintiffs restrained the collector in an action in this court, and thereafter made no further payment of processing taxes into the Treasury of the United States.

Plaintiffs allege that after several of the District Courts, prior to August 24, 1935, held the Agricultural Adjustment Act unconstitutional, the President approved an amendment thereto (section 21, 7 U.S.C.A. § 623) for the purpose of preventing recovery of processing taxes should the law be held unconstitutional by the Supreme Court, which the court so held January 6, 1936. They allege that there was returned to each of the plaintiffs the amount paid into court to cover said taxes, and, in cases where bonds were executed, same were discharged and exonerated in due time after the act was declared unconstitutional.

They also allege that on June 22, 1936, new provisions were enacted in lieu of section 21, specifically repealing provisions thereof applicable to the refund of processing taxes, which are contained in sections 902 to 904 of the act (7 U.S.C.A. §§ 644–646). They state the necessary and inevitable effect, deliberately intended, is to restrict the right of processing taxpayers to the recovery of a much less sum than exacted of them as processors, and also to make the proof of the right to recover difficult, if not impossible, and to postpone the right of recovery so long as to amount to a practical denial thereof. They allege section 910 (7 U.S.C.A. § 652) undertakes to destroy all right of action against the collector for recovery of such taxes, although Congress well knew hundreds of such suits were then pending.

Plaintiffs allege the enactment of sections 501 to 506, or "Tax on Unjust Enrichment," of the Revenue Act of 1936 (26 U.S.C.A. §§ 345 to 345e), was for the deliberate purpose of preventing the recovery of processing taxes by compelling them and others similarly situated to pay, under the guise of taxation, sums which under the protection of the court they had refused to pay as processing taxes under the provisions of the AAA, and to discourage prosecution of suits for the recovery of such taxes, and for the purpose of recapturing any sums which might be recovered.

Section 501 of said act is, in part, as follows:

"(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

"(1) A tax equal to 80 per centum of that portion of the net income from the sale of articles with respect to which a Federal excise tax was imposed on such person but not paid which is attributable to shifting to others to any extent the burden of such Federal excise tax and which does not exceed such person's net income for the entire taxable year from the sale of articles with respect to which such Federal excise tax was imposed.

"(2) A tax equal to 80 per centum of the net income from reimbursement received by such person from his vendors of amounts representing Federal excise-tax burdens included in prices paid by such person to such vendors, to the extent that such net income does not exceed the amount of such Federal excise-tax burden which such person in turn shifted to his vendees.

"(3) A tax equal to 80 per centum of the net income from refunds or credits to such person from the United States of Federal excise taxes erroneously or illegally collected with respect to any articles, to the extent that such net income does not exceed the amount of the burden of such Federal excise taxes with respect to such

articles which such person shifted to others."

Plaintiffs allege that subsection (j) of section 501 (26 U.S.C.A. § 345j) defines the term "Federal excise tax" as used in the act, and, though broad enough to cover other excise taxes, the real purpose of the act was to nullify all rights and benefits which inured to taxpayers from judicial condemnation of the processing tax.

Plaintiffs allege that with the exception of Louisville Provision Company, Henry Fischer Packing Company, and Eckert Packing Company, each of them keeps its books and makes its income tax returns upon a fiscal year basis, ending on October 1st, and hence for 1935 plaintiffs operating on a calendar year basis were required by the terms of the act to make a return and pay the tax shown to be due by such return on September 15, 1936, but the Commissioner of Internal Revenue extended the time for making such return and paying said tax for the calendar year 1935, and for any fiscal year ended in 1935 to December 15, 1936, at which time they were required to file return and pay the taxes due for the taxable year ended in 1935, and that, for the taxable year immediately succeeding the one for which the first return is required, plaintiffs Louisville Provision Company, Henry Fischer Packing Company, and Eckert Packing Company will be required to file and pay the taxes shown due on January 15, 1937, and the other plaintiffs on March 15, 1937.

Plaintiffs allege that the Revenue Act of 1936, in so far as it imposes the so-called "Unjust Enrichment Tax," is unconstitutional for the following reasons:

(1) It is entirely retroactive and applies solely to transactions had and to earnings of business conducted and completed before the passage of the act, and the tax is such radical departure from the method of income taxation or other character of taxation theretofore practiced by the government, and so foreign and unknown in the imposition of taxes, that plaintiffs could not have anticipated its enactment, and to make said tax apply retroactively is to deprive them of their property without due process of law in violation of the Fifth Amendment.

(2) That the imposition is not a good-faith exercise of the taxing power of Congress for the purpose of raising revenue, but for the sole purpose of recovering substantially all of that part of the processing taxes imposed upon these plaintiffs and others in like circumstances, which they did not pay, and to recapture from them substantially all of any sums they may recover as a refund, and that such attempt to circumvent the unconstitutionality of the processing taxes is an arbitrary and capricious exercise of the taxing power for the sole purpose of enabling the national government to secure substantially the full benefit of the processing taxes, even though declared unconstitutional and to deny to these plaintiffs any benefit which would result from recovery or from being relieved of paying the taxes which had not been paid at the time the act was declared unconstitutional.

(3) The act is arbitrarily capricious and violative of the Fifth Amendment because it lays a tax on the past income of the plaintiffs and those similarly situated, at a confiscatory rate, solely because the income so arbitrarily taxed is presumed to have been derived from having passed on to others the processing taxes in respect of the articles from which such merchandise was processed without the taxpayer having paid same, irrespective of whether the taxpayer sustained a profit or loss in its business as a whole during the taxable year.

(4) The tax is not an income tax within the Sixteenth Amendment, nor a tax within the competency of Congress under any other provision of the Constitution, and, if imposed, would amount to a confiscation and expropriation of property of plaintiffs and others similarly situated in violation of the due process clause of the Fifth Amendment, and for the purpose of indirectly enforcing the unconstitutional processing tax statute.

(5) The act is arbitrary and capricious and operates to deprive plaintiffs of their property without due process of law, in violation of the Fifth Amendment.

(6) If a tax in any sense, the imposition is a direct tax and invalid because not apportioned among the several states according to population, as required by the Constitution.

(7) It is an unconstitutional attempt under the guise of taxation to regulate the profit of those subject to its provisions in the conduct of their business affected by the tax, in violation of the Fifth and Tenth Amendments to the Constitution.

(8) The amount of the tax cannot be determined from any ascertainable facts

having substantial relation to the income which it is proposed to tax, but depends upon factors arbitrarily assumed, for which reason the exaction is not a tax, but confiscation in violation of the Fifth Amendment.

Plaintiffs allege it is impossible to calculate with any degree of accuracy the tax required to be reported and paid on December 15, 1936, for its taxable year ended in 1935; yet they believe each would be required to pay in excess of $3,000, exclusive of interest or penalty.

Plaintiffs allege that for the taxable years involved, and for many years prior thereto, each of them, in addition to processing hogs and selling the products processed therefrom, was also engaged in processing of cattle and sheep and in the sale of articles processed therefrom, and in the purchase and sale of eggs, butter, cheese, and lard substitutes, and some of them in the purchase and sale of other foods. They state they have kept no separate cost system of accounting that would reflect profit or loss on any one item manufactured or sold by them, but they have kept accurate accounts of their business as a whole. They state it is impossible for them to determine what profit each or any of them has earned or realized from any of the articles on which processing taxes were levied or collected without going to sources of original data and reconstructing their books of account for six years previous to the imposition of the processing taxes, and for the period of time covered by the act in question.

Plaintiffs state this extraordinary accounting expense, solely attributable to a determination of the tax attempted to be levied under the act in question, would cost not less than $8,000 for the Louisville Provision Company, the Henry Fischer Packing Company, the Eckert Packing Company, and the Field Packing Company; and $3,000 for the Munns Bros. and the Pennyroyal Packing Company.

They allege the accounting expense which they would be required to pay to determine their tax liability under the questioned act could not be recovered in a refundment suit, even though they were successful, and to this extent they would suffer irreparable loss and damage if compelled to pursue any remedy they may have by an action at law or by administrative process, and, unless afforded relief in equity, they, and each of them, will suffer great and irreparable damages.

It is then alleged that, if they should refuse to make a correct return and pay the tax as required under the act, they, and each of them, would subject themselves to penalties and fines and the officers to imprisonment, and they, and each of the them, would incur the risk of having their property seized and sold under distraint.

It is alleged that it is impossible for them, and each of them, with an adequate force of accountants and clerks, to assemble and put in the form for making the return the necessary data within the time required under the law.

It is alleged that notwithstanding the unconstitutionality of the act that the defendant Glenn is insisting that said act is valid and is threatening to, and will, unless enjoined by the court, proceed to require the plaintiffs, and each of them, to make the return, and he will collect the taxes provided under the act and impose the authorized penalties thereunder, and that the defendants Gardner and Swinford will proceed against each of the plaintiffs and their officers to enforce the criminal penalties of the act.

In the second suit (equity No. 1074), Emmart Packing Company, plaintiff, after making the same allegations in equity No. 1073, alleges that on July 1, 1935, after a temporary restraining order was entered in the suit it filed against Collector Glenn to enjoin him from collecting the processing taxes from it, which order was conditioned on it paying into court the amount of the so-called processing tax, there was paid by it into the court registry a total of $162,109.-26, and that thereafter, on January 16, 1936, after deducting costs and expenses, there was returned to it the sum of $149,557.43.

Plaintiff then alleges that at the time of the return of said sum it was anticipating a revision of its capital structure by reason of a dividend arrearage, and that approximately $100,000 of said sum was employed for that purpose.

Plaintiff alleges that said tax is contrary to the provisions of the Constitution because the assessment and collection is so arbitrary, capricious, unreasonable, vague, and uncertain as to be in contravention of the Fifth Amendment and to deprive it of its property without due process of law; also that it is not a tax but a penalty, thereby depriving of property without due process. It also alleges that the tax regulates

the profit which a corporation can make, thereby depriving plaintiff of its property without due process, in contravention of the Fifth and Tenth Amendments to the Constitution, in that such right is reserved to the people of the respective states.

It is also alleged said tax is an effort to confiscate plaintiff's property; that it is not a tax, duty, impost, or excise under article 8, § 1, of the Constitution, nor an income tax under the Sixteenth Amendment, and therefore is in contravention of the Fifth Amendment.

Plaintiff alleges the tax is not an income tax under the Sixteenth Amendment, because it applies only to parties who have failed to pay an unconstitutional excise tax, a capricious classification, thereby depriving it of its property without due process in contravention of the Fifth Amendment.

Plaintiff alleges it is impossible to furnish the information required to be given by the return because, in addition to processing hogs, it engages in the slaughter and processing of cattle, sheep, purchase, processing, sale, and distribution of cheese, butter and eggs, purchase and distribution of canned meats, manufacture of fertilizer, tankage, sausage, and other products and by-products of the meat packing business.

It also alleged it retained a purchase slip or receipt showing the number of hogs purchased, total weight and price paid; that said hogs were identified in no way except weight or price; and that all of said sale slips during the six-year period preceding the imposition of the processing tax were destroyed in part by an unavoidable fire in June, 1930, and the remaining slips by the management because in such condition the records were useless.

Plaintiff alleges no records were kept separating hog by-products from others, although approximately 30 per cent. of the live weight of such hogs entered into such by-products. It is also alleged that no record was kept, nor is there any known basis other than an arbitrary one of attributing a portion of the total cost of production and manufacture in operations to the slaughter of hogs. It also alleges that a portion of the slaughtered hogs are sold as fresh pork or placed in refrigerating storerooms for the purpose of curing, and that it purchased from other packers fresh pork for immediate sale and likewise various cuts from other meat packers for storage, curing, and sale, the processing tax having been paid by others on said products thus purchased;

that these products were commingled with like products processed by plaintiffs without any means of identifying one from the other, which procedure is common in the trade, caused by market conditions over which plaintiff has no control. It says no records were kept or are now kept to identify products purchased from others from those slaughtered and manufactured by plaintiff, all being sold at prices determined solely by competitive conditions in the trade over which plaintiff had no control and no separate charge for processing taxes was made on each or any invoice as a separate item.

Plaintiff also states that it makes sausage of various grades, and there is mixed therein beef, spices, and other ingredients, and that no record is or has been kept which would form a basis for the allocation of the price to the different ingredients other than hog products, except on an arbitrary basis, and that it is therefore impossible to ascertain the gross income from sales of hogs or parts thereof on which the tax was paid and also impossible to give the cost of materials or the manufacturing, production, or operating cost in connection with the first domestic processing of hogs. It alleges it cannot comply with the requirements called for in the return, which would form the basis for the ascertainment of the amount of tax due.

Plaintiff alleges that the basis for computing the amount of said tax is to compare an arbitrary so-called margin of profit in the period when the taxes were paid with a similar margin existing during the six years preceding the imposition of such tax.

It also alleges that about January, 1933, the present management took over control and operation of the company, because of the wasteful and negligent conduct of the company's officers by the prior management; that, since such change, an effort has been made to rehabilitate the company, and therefore a comparison between the margin of profit during the period of the old management and the new would not be proper or reasonable for the purpose of basing the so-called tax on unjust enrichment.

Plaintiff also alleges that it paid the processing taxes imposed on it with its own moneys and did not collect said tax as a tax from its vendees; and the sums representing uncollected processing taxes returned to plaintiff by the court were plaintiff's own money. However, it believes

that under the act it would be required to report and pay before December 15, 1936, a tax in excess of $3,000, exclusive of interest or penalties.

Plaintiff states its records are adequate for its purposes and for applicable internal revenue laws relating to federal income taxes, and similar to those kept by meat packers similarly circumstanced.

Plaintiff alleges its bookkeeping and accounting staff is inadequate to assemble and reconstruct data, with any degree of accuracy, necessary to file a return under the act, and the expense of employing qualified accountants would be in excess of $5,-000, and that the information so collected would be of use only for that purpose, and that the amount expended therefor could not be recovered under any refund statute or other provision of law.

It is also alleged that, after the return of the $149,557.43 processing taxes paid into court, an additional income tax assessment was made against it by the collector of internal revenue for the fiscal year ending October 31, 1935, in the amount of $24,167.83, said assessment arising by reason of the disallowance of deductions from gross income of accrued taxes (covering the contingent liability for processing taxes), and that said amount was paid on November 6, 1936, without protest.

Plaintiff then alleges severe penalties are provided by the act for failing to make return and pay the tax, and that under the circumstances it is without an adequate or any remedy at law, the legal requirement being to do the impossible or suffer such penalties.

It is also alleged it has no adequate, or any, remedy at law with respect to the expenditure of $5,000 to assemble and coordinate the data to make the return.

It is also alleged the payment of 80 per cent. of the net amount returned to it ($149,557.43), if the Commissioner arbitrarily so determined, would impair its credit and reduce its working capital to a point insufficient for the proper conduct of its business, for all of which it has no adequate, or any, remedy at law.

In the third suit (equity No. 1076), Klarer Provision Company, Incorporated, plaintiff, after making substantially the same allegations contained in No. 1073 and No. 1074, and alleging the jurisdictional amount, states that from the first effective date of said tax, and in compliance with provisions of the Agricultural Adjustment Act, it reported to the collector of internal revenue for the District of Kentucky at intervals the amount of tax due, including floor tax on stocks on hand at the time said tax became effective, and paid the processing taxes shown to be due by said report as they fell due according to the terms of the act, but paid no taxes for any month subsequent to November, 1935, and the amount so paid in was $78,294.33.

Plaintiff alleges it now has an action pending in the District Court for the Western District of Kentucky for the recovery of $51,688.46, which will be dismissed without prejudice and filed in the Court of Claims.

Plaintiff makes the same allegation as made in No. 1074 with reference to the difficulty of allocating cost to any quantity of any product, for the reason that its hog meats are mixed and commingled with beef, veal, lamb, etc., and therefore impossible of segregation.

It is also alleged that, after receiving its forms for making reports about November 15, 1936, it put its bookkeepers and auditors to work in order to comply with the act, and the auditors reported it would take four or five months to do the work and the total cost would be from $2,500 to $7,-000, and that, even if the act were finally declared unconstitutional, the plaintiff could not recover the costs expended for this work. Plaintiff then sets up the penalties for not complying with the act.

The defendants in these actions have filed motions to dismiss on the following grounds:

(1) The court is without jurisdiction because of the provisions of section 3224 of the Revised Statutes (26 U.S.C.A. § 1543), which prohibits the maintenance in any court of a suit for the purpose of restraining the assessment or collection of a federal tax; section 267 of the Judicial Code (28 U.S.C.A. § 384), which prohibits the maintenance in any court of the United States of a suit in equity where there is a plain, adequate, and complete remedy at law.

(2) The bill of complaint sets forth no facts, which, if true, would entitle the plaintiffs to relief in a court of equity.

(3) The plaintiffs have a plain and adequate remedy at law.

(4) The petition does not state a cause of action in equity.

Each of the plaintiffs has made a motion for a temporary injunction for reasons converse to those set out in defendants' motions to dismiss.

A decision favorable to either party on the respective motions disposes of the controversy, and for that reason the motion to dismiss will be considered first.

■ A court of equity will not enjoin an apprehended illegal assessment, even though such illegality may arise from an unconstitutional exercise of the taxing power or an unlawful determination of the tax. Prompt and unhampered collection of taxes is considered so essential to the successful operation of the government that a court of equity should never intervene to interfere with the garnering of public revenues unless some other well-recognized ground of equitable jurisdiction exists. All just governments provide a way to correct wrongs done their citizens, and, if a plain and adequate statutory remedy is provided for the illegal exaction of a tax, the taxpayer in all cases should be required to invoke it.

■ Section 3224 of the Revised Statutes (26 U.S.C.A. § 1543) first came into the statutory law by an Act of March 2, 1867, c. 169, 14 Stat. 471. It stated nothing new, but only clarified that which the courts had from the beginning declared to be the law. This act has never been construed to absolutely prohibit courts of equity from exercising their power to protect the taxpayer from an illegal tax if no other remedy was available. Three notable exceptions have been applied, notwithstanding the statutory prohibition against equitable actions: (1) Stockholders' suits to restrain the corporation from paying taxes claimed to be unconstitutional; (2) suits to enjoin the collection of alleged taxes, which are in fact penalties; and (3) suits in which special and extraordinary circumstances appear, impelling a court of equity to act.

■ The third exception would be applicable to a suit when the facts showed irreparable damages or injuries would be sustained by the taxpayer if he paid the tax. Such an injury means that which cannot be repaired, restored, or adequately compensated for in money, or where the compensation cannot be correctly measured in money. The plaintiffs undertake to bring their actions within the last exception. It is claimed that each of them will have to expend large sums in assembling facts and constructing books of account in order to correctly make the return contemplated under the act in question. If this be true, the plaintiffs have stated a case of extraordinary circumstances, because it is alleged by each of them, and not denied by the defendants, that as the act is retroactive in its application, and the tax one that could not have been anticipated, as the taxable events took place, each of them must expend the sums stated in the petitions for the extraordinary purpose of the taxing act without any provision for recovery.

■ If no such expense is imposed on plaintiffs in preparing their returns, the ground for equitable relief becomes ephemeral and of no weight. This is likewise true of criminal penalties. Plaintiffs are not required to restate their accounts for the purpose of determining the taxes, if any due, with exact certainty. Each of them undoubtedly knows the approximate cost of the taxed processed articles manufactured and sold by it, and the approximate profit realized in the sale thereof, and, as will appear from a discussion of the law later in this opinion, the tax is subject to approximate ascertainment without such a detailed audit as plaintiffs seem to think necessary. All any taxpayer needs to do in making his return is to act in good faith and avail himself of the means at his command to determine honestly and fairly the question of his liability. Dayton Bronze Bearing Company v. Gilligan (C.C.A.6th Circuit) 281 F. 709; Duffin v. Lucas (C.C. A.6th Circuit) 55 F.(2d) 786; Mitchell v. Commissioner, 32 B.T.A. 1093; Commissioner v. S. A. Woods Machine Co. (C.C. A.) 57 F.(2d) 635; Hartford-Connecticut Trust Company v. Eaton (C.C.A.) 34 F. (2d) 128; United States v. Tillinghast (C. C.A.) 69 F.(2d) 718; Florsheim Bros. Drygoods Co. v. United States, 280 U.S. 453, 461, 50 S.Ct. 215, 217, 74 L.Ed. 542; Commissioner of Internal Revenue v. Stetson & Ellison Company (C.C.A.3d Circuit) 43 F. (2d) 553.

■ After the plaintiffs had determined what taxes, if any, each owed under the questioned act and made their returns, which need only include such income from taxable sources under the act as could with reasonable certainty be determined from the information in their possession at the time the act became effective, the Commissioner of Internal Revenue would be authorized to make an audit and review of the return. 48 Stat. 699, 26 U.S.C.A. § 57. If

the Commissioner found a deficiency in tax as provided under 48 Stat. 740, 26 U.S.C.A. § 271, it would be his duty to notify the taxpayer as provided in 48 Stat. 741, 26 U.S.C.A. § 272(a). The taxpayer could then appeal to the Board of Tax Appeals, and a trial be had without the payment of any tax. The Commissioner of Internal Revenue would be required to find a fact basis for the determination of a deficiency, which, if arbitrary and without support, would be void. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Russell v. Commissioner (C.C.A.1st Circuit) 45 F.(2d) 100. It will thus be seen, if, as stated in plaintiffs' petitions, each of them could not find a fact basis for determination of the taxes provided under the act here in question, the Commissioner of Internal Revenue would face the same difficulty in determining a deficiency.

Plaintiffs need not file a completed return. If each or any one of them, as to it, believes in good faith it cannot determine its tax liability, and if so acting, it is only required to file such return as may be compiled from the facts in its possession at the time the act became effective. The burden does not rest on the taxpayer under this act to go to any extraordinary expense to make a return, which is true of every retroactive taxing act. It necessarily follows the same principle would be applicable to failure to pay the tax, and to follow on through, the same would apply to a criminal prosecution of the corporation or its officers. Good faith is a barrier to failure to file completed returns, to the payment of taxes, or penalties, or criminal prosecution, without first having a determination of liability under due process.

If the Commissioner of Internal Revenue should determine a deficiency and the taxpayer did not elect to contest it, through the Board of Tax Appeals and by appeal to the Circuit Court of Appeals, and certiorari to the Supreme Court, as provided in 44 Stat. 9, as amended, 26 U.S.C.A. §§ 641, 642, he could pay the deficiency, file claim for refund, and, if denied, file suit in the District Court, or Court of Claims, for recovery. Rev.St. §§ 3220, 3226, 3228, as amended, 26 U.S.C.A. §§ 1670(a) (1), (b), 1676, 1672–1673, 1433; 28 U.S.C.A. §§ 41, 250.

If the necessity exists for a reconstruction of plaintiffs' accounts in order to accurately determine what taxes, if any, are due by each of the them, the expense of such determination need not be borne by any one of them. In the last analysis, if a tax return is filed in good faith, the burden of determining the factual basis for additional taxes will rest on the Commissioner of Internal Revenue.

From the facts stated in the respective plaintiffs' petitions, each of them, if it so desires, may have a determination of its liability to taxes tried at law before being called on to pay, and this may be had without the risk of penalties or undue hardship.

I am satisfied the plaintiffs have an adequate remedy at law, but, if this conclusion is erroneous, they are not entitled to relief for the additional reason which follows.

At the time of the passage of the act here in question, the Congress was confronted with the problem of raising $620,000,000 of additional revenue to pay the soldiers' bonus, and make refundment of taxes unconstitutionally imposed. House Report No. 2475, 74th Congress, 2d Session, pp. 1–5. It was presumed when the Agricultural Adjustment Act was adopted that the excise taxes levied pursuant thereto would be passed on to the ultimate consumer. The first processor was required to pay the tax, but it would be immediately reflected in the retail price of the taxed article. The original act (chapter 25, 48 Stat. 31, see 7 U.S.C.A. c. 26, § 601 et seq.) provided that, where contracts of sale existed at the time of the effective date thereof, the purchaser thereunder was required to either pay the tax or make satisfactory adjustment with his vendor. Numerous other parts of the act provided for compensation to the original processor for the taxes borne by him. It would extend this opinion unnecessarily to enumerate them, but throughout the administration of the act provisions were made to avoid its weight falling on the processor and an examination of the price of taxed processed articles clearly shows the tax was reflected therein. The Congress was confronted with the problem of raising the additional revenue. The burden was to fall either on the general taxpayer or some special class, and, while justice is not a cardinal principle in taxation, Congress leaned on its side in selecting the class that profited most by the previous unconstitutional exercise of the taxing power. The processors had, before the Agricultural Adjustment Act was declared unconstitutional, enjoyed an increase

in the price of the taxed articles and presumably their profits had been increased accordingly. In theory at least, if not in practice, all taxes enter into the ultimate cost of the taxed article and the Congress had the right to presume that the processor had either collected the tax or added it to the price of his product, and he had enjoyed an unearned increment or enrichment which was ostensibly held by him for contribution, enforced or otherwise, for an activity of the government, which it would seem the government should tax. The taxing theory back of the so-called "Unjust Enrichment" is not new. United States v. Jefferson Electric Manufacturing Company, 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859; Bull v. United States, 295 U.S. 247, 55 S. Ct. 695, 79 L.Ed. 1421; Perry v. United States, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912, 95 A.L.R. 1335. The processors had enjoyed an unearned increment, and the act here involved is somewhat similar to the English system of taxation in laying a heavy duty on increment value or unearned increments. See Section 57 of the Finance Act of Parliament, 1920.

The principle underlying this act was, considered and approved in Hoe & Co. v. Commissioner (C.C.A.) 30 F.(2d) 630, 632. In that case the Second Circuit was considering the constitutionality of the War Excess Profits Tax, 40 Stat. 1088. The act was similar in its provisions to the act here in question. The court said: "The contention that the act laying a high tax on government war contracts is unconstitutional is without merit. The profits earned under war contracts were in general abnormally high, so that it was reasonable to impose higher rates upon them than on the profits of contracts made at a later time. There was a special reason to single out government contracts. The government was likely to have to pay more than a responsible private corporation because of difficulty in dealing with it in the event of any dispute and the delays which might occur in obtaining payment for lack of adequate appropriations. And there was, moreover, always the chance, which befell the taxpayer in this case, of the cancellation of contracts, due to the sudden ending of the war. All contractors of the same class were taxed under the act upon the same basis, and as there was a real difference between government and nongovernment contractors, we have no doubt that the classification was a justifiable one, and that the act was constitutional."

The first ground of unconstitutionality urged by plaintiffs' counsel is violation of the Fifth Amendment because retroactively applied.

The tax imposed by section 501(a) (1) (c. 690, 49 Stat. 1734, June 22, 1936, 26 U.S.C.A. § 345, (a) (1) imposes a tax of 80 per cent. on the net income derived from the sale of articles in respect of which a federal excise tax was imposed but not paid, which is attributable to shifting to others the burden of the excise tax, and which does not exceed the taxpayers' net income for the entire taxable year from the sale of articles with respect to which such federal excise tax was imposed.

The tax is applicable only to income received for taxable years ending during the calendar year 1935, and subsequent taxable years. It became effective June 22, 1936, and could be retroactive to January 31, 1935. This made the act retroactive for a maximum period of sixteen months. The Agricultural Adjustment Act was held void by the Supreme Court on January 6, 1936, in the case of United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A. L.R. 914. For many months before that time, taxpayers were resisting the payment of processing taxes and contesting them in court. In order to determine the ordinary income tax liability of such persons and corporations, it was necessary to make adjustments in their returns because the processing taxes had been an integral part of the cost of goods sold and a deductible expense. Unless such adjustments were made, such persons or corporations would have had an expense deduction from gross income to which they were not entitled and, as to those taxpayers who had not made their return at the time the act was passed, their gross income would have been increased. The period of applicability of the act had a sensible connection with the determination of income.

As respects income tax statutes, in almost every instance some parts of them have been retroactive for reasonable periods. Compare United States v. Hudson, 57 S.Ct. 309, 81 L.Ed. — decided by the Supreme Court, January 11, 1937.

The plaintiffs strongly rely on the cases of Nichols v. Coolidge, 274 U.S. 531, 47 S. Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Blodgett v. Holden, 275 U.S. 142, 276 U. S. 594, 48 S.Ct. 105, 72 L.Ed. 206; Untermyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645; Milliken v. United

States, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809; Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 75 L.Ed. 562, in support of their contention the act is void because retroactive. Each of the cited cases involved the taxability of estates or gifts vesting before the acts were passed, and are clearly distinguishable from the case at bar. The interests of persons other than taxpayers had intervened in each of them, and there was no relation between the tax imposed and the event that produced it.

As I have heretofore stated, the plaintiffs here would have been taxable on the gains realized by the sale of goods for more than cost where the processing tax was part of the cost and the only basic difference between the tax under the applicable statute and the act here in question is one of rate. See, also, Patton v. Brady, Executrix, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713; Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596; Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L. Ed. 949.

The second ground of unconstitutionality is that the act is one springing from congressional bad faith, and intention on the part of that body to avoid the decision of the Supreme Court in the Butler Case, and an arbitrary and capricious attempt under the guise of valid taxation to recover and retain money unconstitutionally extorted from taxpayers.

The federal government is one of divided powers, and functions appropriate to each of the three branches belong exclusively to that particular branch and one should not encroach on the other. The motive, wisdom, or discretion of the Congress cannot be judicially scrutinized. So long as it acts within the limits of its powers defined by the Constitution, it is no concern of the courts, even though it may have been motivated by a desire to unjustly impose a burden on one particular class for the benefit of another. Where the constitutional power is given to tax, it has no limits. "It carries with it inherently the power to embarrass and destroy."

Neither the Fifth nor Tenth Amendments take away the power to tax conferred on the Congress by the Constitution (art. 1, § 8, cl. 1), and, if the act in question is a constitutional exercise of that power, the motives or purposes of Congress in enacting such legislation are not open to judicial inquiry. These principles so long recognized in our constitutional history and so often applied dispose of plaintiffs' second ground of attack on the constitutionality of the act. It may be said, however, that there is nothing in its substance or wording which would lead to the conclusion that the Congress surreptitiously intended to evade the refundment of taxes theretofore collected and decided by the Supreme Court to have been unconstitutionally imposed. It is plain from the langauge of title 3 of the act (26 U.S.C.A. §§ 345–345e) that it was the purpose of the Congress to replace revenues lost because received unconstitutionally, and as a part of its program it chose to impose a higher rate upon a class of income which taxpayers had enjoyed through fortuitous circumstances rather than from normal business operations.

The third and last ground urged as a constitutional inhibition is that the alleged tax is so arbitrary, capricious, unreasonable, vague, and uncertain as to be in contravention of the Fifth Amendment, thereby depriving plaintiffs of their property without due process of law. As I have heretofore pointed out, the act here in question imposes a tax at the rate of 80 per cent. on the net income of the taxpayer enjoyed from any one of the three sources stated in the statute, set out in full in this opinion on pages 425 and 426 of 18 F.Supp.

Plaintiffs claim that this statute violates the well-known principle that every valid statute must be so definite and certain that men of common intelligence may understand whether they are within or without its terms.

They further claim it is utterly impossible to trace the shifting of a tax in the price of a taxed article and that no income may be said to be attributable to shifting to others the burden of any tax because there is no such standard for its measurement.

In connection with all taxation measured by the flow of particular kinds of wealth, it is difficult to determine upon whom the final tax burden rests. Every purchaser takes care to buy himself free of the burden, and it is not necessary to wait for the actual imposition of the tax before its weight is reflected in prices. Even a hint of an imposition begins to influence market prices, and it was not arbitrary of the Congress to conclude that the processor, whose duty it was to pay the excise tax under the Agricultural Adjustment Act, would add it to the price of the processed product. There was no untaxed supply, and the tax was so

heavy that the conclusion is inescapable that there was a shifting of the burden, and it was further reasonable to assume that the processor realized a profit out of the tax at the time of the sale during the collection period of the tax where it was not subsequently paid to the government. No doubt the increased price of the taxed processed article immediately after its imposition would clearly indicate that the tax was reflected therein, and a decline immediately after the tax ceased would likewise prove the same fact.

■ It is not unreasonable to suppose that all the plaintiffs here maintain a correct system of cost accounting, and from such a system each can readily ascertain the aggregate cost of products which bore a processing tax and also the gross sales price of such products so that the profit from such sales can be readily ascertained. The amount of net income specified in section 501(a) (1–3), 26 U.S.C.A. § 345(a) (1–3), subject to the tax is limited to the taxpayers' net income for the entire taxable year on the sale of articles with respect to which the particular excise tax was imposed, thus granting an offset for any losses during the same taxable year from this particular part of his business. While it is true that both income and losses are segregated from the other business of the taxpayer, this is not such a classification as would make the act arbitrary, as in the realm of income taxation the right of Congress to classify is beyond challenge. State Board of Tax Commissioners v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248, 73 A.L.R. 1464. Every income tax law has classified income from numerous sources and applied varying rates pursuant to such classification. This act provides two methods of computing the net income specified, each with a definite plan for determining taxable net income, and every deduction allowable under the general act is also allowable in determining the tax under this act with one exception. Attorneys' fees incurred by the taxpayer in contesting the tax are limited to 10 per cent. thereof. As to the power of Congress to limit the attorneys' fees, I do not determine. That question is not material to this opinion.

After net income is determined as outlined above, it is not assumed that all such income was realized from a shifting of the taxes, but it is assumed some part of it was thus realized, and section 501(e) (2), 26 U.S.C.A. § 345(e) (2), sets up a prima facie rule for ascertaining the amount. The net income is reduced to a unit basis by dividing the total number of units on which the excise tax was due from the taxpayer, but not paid, into the total net income, and this is called the "unit margin." The same method is then used to determine net income over a period of six years preceding the initial imposition of the federal excise tax in question and an "average margin" thus ascertained. This "average margin" is then deducted from the "unit margin," and the difference is the net income realized from the shifting to others of the tax.

If the taxpayer has no pre-tax period from which the average margin may be determined, or if its records for any part of said period are inadequate, the average margin may be determined by a fair comparison with representative concerns engaged in similar business and similarly circumstanced.

The plaintiffs insist that the prima facie rule for determining what income, if any, was realized from the shifting of the tax, does not tend to prove such shifting or have any connection whatever with the determination of that fact, and the presumption means nothing, and, because it has no connection with the facts to be determined, it is irrefutable.

The average margin is established by using net income from the sale of processed articles for a period when no excise tax was in existence. Unless there was an economic change in costs or sale price from the period used for determining average margins and the period for which the excise tax was in effect, it would tend to establish the profit realized from the shifting of the tax. The principle applied is somewhat similar to the theory of reproduction costs in determining the market value of property. It has been used frequently in determining the gain realized from the sale of capital assets in income tax cases, and for rate making in public utility cases. The theory of comparing the business of a taxpayer with that of one similarly circumstanced to establish a fact in determining tax is thoroughly grounded in the income tax law. Blair v. Oesterlein Machine Company, 275 U.S. 220, 48 S.Ct. 87, 72 L.Ed. 249; Williamsport Wire Rope Company v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985.

■ The proof of the fact of the shifting of the tax under the act here in question, by comparing prices and costs of

processed articles between periods of time when the tax was not in effect with periods when it was, is of evidential value, and such a method is not arbitrary and unreasonable. Legal presumptions arising from a state of facts have had the approval of the courts in many matters relating to income tax liability. United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867; Edwards v. Douglas, 269 U.S. 204, 46 S.Ct. 85, 70 L.Ed. 235.

Under section 501(i) of the Act, 26 U. S.C.A. § 345(i), either the taxpayer or the Commissioner may rebut the presumption established by subsection (e) by proof of the actual extent, if any, to which the taxpayer shifted to others the burden of the federal excise tax. Under this section the presumption is both in terms and in fact rebuttable, and any competent evidence may be produced to prove whether or not any income was realized by the taxpayer from tax shifting. I'entertain no doubt of the ability of administrative officers or the courts to determine with reasonable certainty what income, if any, the plaintiffs realized from the shifting to others of the excise taxes levied under the Agricultural Adjustment Act.

Plaintiffs have raised numerous other questions concerning the constitutionality of the act here involved, but I find it unnecessary to consider each objection specifically, as the reasons stated in this opinion for sustaining the act dispose of all contentions made by the parties.

There has been no practical test of the act. It is only here treated in the abstract. It is not self-evident that the statute is unworkable. An order will be entered dismissing petitions in each of the actions.